## BYINGTON v. WOODWARD & WARDE.

1. Ruling upon a motion for a new trial will be reviewed. A motion for a new trial upon the ground that the verdict is against the evidence, is addressed to the sound discretion of the court. The discretion is a legal one, however, and when it is made apparent to this court that a new trial should be granted, it will be ordered, though it has been refused by the District Court.

2. Promissory note: effect of denial of execution. Where, in an action on a note purporting to have been executed by a firm, the execution of the note by the firm was denied under oath, but the signing by one of the parties, was admitted on the trial; *Held*, that proof of the signature was unnecessary, but that the signature was not *prima facia* evidence of the execution of the note by the firm.

3. Same. Where the execution of a copartnership note is denied under oath, it must be proved.

4. Existence of the copartnership must be shown. When the execution is thus denied, the existence of the copartnership will not be presumed, neither will it be presumed that it was executed in the transaction of copartnership business. Both must be established by proper proof.

5. Same. The existence of copartnership being once shown, it is presumed that it continues; but there is no presumption of a prior existence. Proof of a partnership after the execution of a note is not sufficient to establish a copartnership at the time it was executed.

6. Copartnership: how proved. A copartnership may be proved by the separate admissions of all the copartners; by the acts, declarations, and conduct of the parties; or by the acknowledgments of a part of the copartners, and the acts of the others.

*Appeal from Muscatine District Court.*

WEDNESDAY, OCTOBER 19.

THIS action was brought upon a note dated March 12, 1852, due nine months after date, payable to plaintiff, and signed "Woodward & Warde." Woodward was served, and answered, denying under oath, the execution of said note, by himself or any person for him. He further answered, but not under oath, denying any indebtedness; that if the note was executed by Warde, it was given for the consideration of certain military land warrants, purchased by said Warde, in the purchase of which defendant, (Woodward,) had no knowledge, nor part, and gave no consent; that said warrants were the property of one White, that plaintiff was White's agent, and that the note was, and still is, the property of the principal; and that the principal, and agent, after the note was given, had a settlement, in which this note was credited to plaintiff, and treated by said White as a loss. To this answer there was a replication, fully denying all the averments.

The cause was heard and determined by the court, in favor of the defendant, upon the following testimony. Plaintiff offered in evidence the note; also a card, as follows:

"W. G. Woodward, John C. B. Warde. Woodward & Warde, attorneys and counsellers at law; Muscatine, Iowa. Mercantile paper collected and the proceeds remitted upon the usual mercantile terms.

The above act as agents for the purchase and sale of lands and for the payment of taxes, and for the sale of land warrants. Reference."

And the following advertisement in the Muscatine newspapers:

"Woodward & Warde, attorneys at law, and solicitors in chancery. July 3, '52." Also, "land warrants for sale, or located on time. Lands for sale, improved and unimproved. July 3, 1852. Woodward & Warde."

And a notice of the dissolution of said partnership, dated

Nov. 4, 1852, and published on the 22d of that month.  It was admitted that Warde executed the note, but denied that he had power so to do.  It was also shown that on the 1st of March, 1852, a bond was made signed by the firm name, as attorneys on part of one Barton, for the sale of a certain tract of land, and the conveyance of the same upon the payment of the purchase money, and after the receipt of a patent from the Secretary of the Interior.  And this was all the plaintiff's testimony.  Defendant proved by said White, that plaintiff was his agent for the sale of land warrants from the autumn of 1851, to the spring of 1853; that he settled with him in 1855, and in that settlement, plaintiff offered him a note on Woodward & Warde, which he refused to take; that he supposes plaintiff was owing him, upon a fair settlement, about fourteen hundred dollars; that he took one thousand; and that plaintiff told him the note was given for land warrants.  This was all the testimony.  A motion for a new trial was made, and overruled.  Plaintiff appeals.

*Richman & Bros.*, for the appellant.

*James Grant* and *D. C. Cloud*, for the appellee.

WRIGHT, C. J.[1]—The error assigned is, that the finding of the court is against the law and the facts.  In submitting the case to the court, the parties reserved to themselves the right to except, in the same manner, as if it had been tried by a jury.  This was their legal right, without agreement. The court took the place of the jury, and its finding, has the same degree of conclusiveness as a verdict.  And we are now called upon to review this judgment in the same manner that we would the verdict of a jury.·  We are to be governed by the same rules, and give every presumption in favor of its correctness.  *Williams* v. *Souter* and *Drew*, 7 Iowa 435. If the court below errs in granting or refusing a new

1 WOODWARD, J., being interested, took no part in the determination of this cause.

trial, upon a legal proposition, such ruling is reviewed here, with no more presumption in favor of its correctness, than a ruling made in any other stage of the case. Where the motion is made upon the ground that the verdict is against the evidence, it is peculiarly addressed to the sound discretion of the court trying the case. And that the rule upon this subject, in its application to the case before us, may be clearly seen, we again state that "the discretion is a legal one, and is to be legally and properly exercised. Where the mind is brought irresistably to the conclusion that the verdict was not the result of a free, sound, and unbiased exercise of judgment, on the testimony submitted, and that manifest injustice will result if judgment is rendered upon such verdict, it will be the right and duty of the court below to grant a new trial; and where such a case is made clearly apparent to this court, a second trial will be ordered though refused by the District Court." *Fawcett* v. *Woods*, 5 Iowa 400; *Jourdan* v. *Reed*, 1 Ib. 135, and cases there cited.

What view was taken by the judge below, of the law of the case, we cannot tell, except as it may be inferred from the conclusion drawn from the evidence submitted. And let it be remembered that we are reviewing the case, not upon the facts found, as contemplated by section 1793, of the Code, but upon the entire testimony, just as we would the verdict of a jury, all the evidence being before us. As to the law of the case, appellant claims, "that if a note is signed by partners, apparently in the partnership name, their liability is presumed, and it is not incumbent upon the holder of the note to show affirmatively, that it was given as a partnership transaction, and that this is true, though the partnership is limited to a particular branch of business; citing, *Waldo Bank* v. *Greeley*, 16 Maine 419; *Vallett* v. *Parker*, 6 Wend. 615; *Barrett* v. *Swann*, 17 Maine 180; *McMullen* v. *McKenzie*, 3 G. Greene 368; *Doty* v. *Bates*, 11 John. 554; *Whittaker* v. *Brown* 16 Wend. 507; and see *Ensminger* v. *Manin*, 5 Black. 210; Collyer on Part. 382, and note; *Knapp* v. *McBride*, 7 Ala. 19.

The appellee on the other hand claims, that the general power of one partner to bind another by promissory note, applies to partnerships *in trade,* and no such presumption arises in the case of land agents and attorneys; or those partnership's which are formed and limited to a particular branch of business, citing *Greenslade* v. *Dower,* 7 Barn & Cres. 635; *Dickenson* v. *Valpry,* 10 Barn & Cres. 128; *Hedley* v. *Bainbridge,* 3 A. & E. 316; 1 Carr. & Marsh. 453; 1 Story on Cont. section 218, and note; Story on Part. sections 126, 127, 128, 134, 165; 3 Kent 41, note *b;* Par. Com. L. section 175, note 2; *Gray* v. *Ward,* 18 Ill. 32; Coll. on Part. section 402; and see *M. & M. Bank* v. *Winship,* 5 Pick. 11; *U. S.* v. *Binney,* 5 Pet. 529; *Etheridge* v. *Binney* 9 Pick. 272.

It is thus seen that the authorities conflict; the only case cited in this State being in favor of appellant. From the view we shall take of the case, it will be unnecessary to determine between this conflict of opinion. Let it be conceded that the law is as claimed by appellant; that the court below should have so held, and still we cannot say that the finding was so clearly against the evidence as to justify a new trial. It will be remembered that the execution of the note is denied under oath. The subsequent admission, on the trial, that Warde signed the note, rendered proof of the hand writing or signature, unnecessary. Without such sworn denial, the signature would have been *prima facie* evidence of the execution. With it, in the ordinary case of a signature by one person as payor, proof of the signature or execution is required. In the case of a partnership, the execution of the note must be proved (where there is a sworn denial;) and where a firm name is signed by one, the existence of the partnership, at the time of such execution, should also be shown. It will not do, where the execution is thus denied, to presume from the existence of the note, the existence of the partnership, and then further presume that it was given on a partnership transaction. In other words, the existence of the partnership at the time, being

Byington v. Woodward & Warde.

necessary in any view of the law, to enable one to sign or act for two as partners, the relation must be established by other proof than that derived from the instrument in controversy. The admission of one cannot bind another, until it is shown that he has a right to thus speak for him. (1 Parsons 152 and the case there cited.)

Aside from the note, then, we are not prepared to say that the proof of the partnership, at the time it was executed, was so clear or satisfactory, that a verdict to the contrary, could be said to be so much against the weight of evidence as to justify a new trial. We cannot say but that the finding was the result of a free, sound and unbiased exercise of judgment, on the testimony submitted. The only evidence of any act done by either of these parties, (defendants) prior to the date of the note, is the execution of the bond, which was dated March 1, 1852. The note was made March 12th, and the next date is that of the advertisement in the newspaper, July 3, 1852. When the card was issued, is not shown. In July, after the note was executed, then these persons, by their card acknowledged their joint relation, and beyond the bond and note, this is the first certain information we have of such partnership. The effect to be given to the note in this respect, we have already shown. What of the bond, then? It is not shown who executed it, nor that Woodward, by act or admission of his, recognized it as a partnership transaction, or that a partnership then existed. To say the least of it, therefore, it did not so conclusively establish a partnership as to preclude a contrary finding. Nor can proof of the partnership *afterwards* aid plaintiff; for, while the presumption is that it continues, its existence being once shown, no presumption obtains of a prior existence. The existence of the partnership is a question of fact for the jury, (or in this case, for the court,) and they alone are authorized to decide upon the weight and sufficiency of the testimony to establish that fact. 2 G. Greene 368. It may be proved in many ways, as by the separate admission of all—the acts, declarations and conduct of the parties, or the

act of one, the declaration of another, and the acknowledgment or contract of a third. *Welch* v. *Speakman*, 8 Watts & S. 257. Strict proof is not required, (note 1, Collyer on Part. p. 699,) but some amount of proof is, and of its sufficiency the jury are to determine.

While therefore we may admit that treating it as a question, first presented to us for determination, we might find the proof sufficient upon this point in the case, we cannot say, as an appellate court, that there was any such error of judgment, as to justify our interference. There is no very controlling reason why the court, setting as a jury, might not have found either way, and in such a case, the rule should be to affirm, rather than reverse. Other points in the case might be referred to sustaining the view taken upon the one above discussed, but the foregoing is sufficient.

Judgment affirmed.