HEWITT v. RANKIN ET AL.

1. **Partnership:** INTEREST IN REAL ESTATE. Real estate held by a partnership is to be regarded, so far as creditors are concerned, as the property of the firm. A partner should be considered in such cases as holding only an interest in the stock or capital, which is personal property.

2. ———: ———. When the business of the partnership is closed and there are no equities in favor of third parties, the partners or their representatives hold a direct interest in the real estate and it is subject to all the rules applicable thereto.

3. **Mortgage:** NOTICE. A mortgagee, as to the interest he holds in lands mortgaged and notice of prior claims or conflicting title, is to be regarded as a purchaser.

4. **Conveyance:** EQUITY. Bona fide purchasers for a valuable consideration may acquire an interest in lands free from any equity or trust with which it was charged in the hands of the grantor.

5. **Homestead:** TENANT IN COMMON. A tenant in common, holding by an equitable title, may have a homestead in land which he occupies as such.

*Appeal from Lucas Circuit Court.*

FRIDAY, JUNE 18.

ACTION in chancery. The petition alleges that defendant Rankin, to secure a promissory note by him made September 1, 1870, for $2,000, on the same day executed a mortgage on the N. ½ NE. ¼, and the NE. ¼ NW. ¼, and the SE. ¼ Sec. 1, Tp. 72, R. 23, and the SW. ¼ SE. ¼ Sec. 25, Tp. 73, R. 23, and other lands which need not be particularly described. The petition, showing that plaintiff is the holder of the note as administrator of the estate of William Hewitt, the payee, prays that the mortgage be foreclosed. The mortgage was filed for record September 6, 1870.

Elizabeth E. Rankin, wife of the defendant, filed a petition of intervention, claiming a homestead in the SW. ¼ of the SE. ¼, Sec. 1, Tp. 72, R. 23, and asked to be made a party to the suit.

By an amendment to the petition N. B. Branner, administrator of John Branner, deceased, Lockhard & Ireland,

and Samuel N. Fain were made defendants, on the ground that they claimed an interest in the lands covered by the mortgage.

The answer of defendant, Rankin, sets up that, when the mortgage was executed, he held title to none of the lands except the N. ½ NE. ¼ and NE. ¼ NW. ¼, Sec. 1, Tp. 72, R. 23; at that time he held an interest in the other lands under a written agreement between himself and John Branner and S. N. Fain, whereby they became partners in entering wild lands. The agreement is made an exhibit. It was executed in February, 1852, and provides that Branner & Fain are to furnish land warrants sufficient to locate one thousand acres of land in their names. Rankin, the defendant, is to have charge of the location of the lands, and is to pay taxes thereon and to lease or rent them for the benefit of the co-partnership, and protect the property from trespassers. The firm, it is provided, shall continue for the term of five years, or for a longer or shorter time, as the parties shall agree. At the termination of the partnership it is stipulated " the parties are to be equal in the profits of said lands or property that may be on hand after paying back to Branner & Fain the capital invested. * * * * * * Rankin is to keep an oversight on the said lands and to stay on and improve the same, or to use the same in the most profitable way for said firm." The answer alleges that the lands described in the mortgage were entered under this agreement with land warrants furnished by Branner & Fain, excepting the N. ½ NE. ¼ and NE. ¼ NW. ¼, Sec. 1, Tp. 72, R. 23, which were not included among the partnership lands, and the title thereto was acquired by defendant independent of and without any connection with the contract between the parties. It is also shown that, after the execution of the mortgage, Rankin obtained a perfect title to the SE. ¼, Sec. 1, Tp. 72, R. 23, and the SW. ¼ SE. ¼ Sec. 25, Tp. 73, R. 23.

Lockhard & Ireland, in their answer, claim an interest in the N. ½ SE. ¼ and SE. ¼ SE. ¼, Sec. 1, Tp. 72, R. 23, and the SW. ¼ SE. ¼, Sec. 25, Tp. 73, R. 23, under a sheriff's sale upon a judgment in their favor against defendant E. C. Rankin,

rendered in the District Court of Clarke county, a transcript of which was duly filed in Lucas county, June 2, 1870. Their judgment was satisfied by the sale of these lands. They claim that their judgment lien was prior to the mortgage of plaintiff, and pray that it be so declared.

Defendant Fain, by pleadings in answer to the petition, and in reply to the answer of other defendants, admits the entry of the land under the partnership agreement, but alleges that each tract of land described in plaintiff's mortgage, under that contract, was entered with means advanced by himself and Branner, and that defendant Rankin had no interest or right in any tract described, (except in the profits arising under the contract,) at the time of, and prior to, the execution of the mortgage; that prior thereto, namely, Aug. 12, 1854, Rankin had received two hundred and forty acres upon his share of the profits out of the land entered under the contract, which transaction is set out in Rankin's answer. He then alleges that Rankin replaced in the firm property what he had received by way of advancement, and on the 20th day of April, 1872, the partners proceeded to a final settlement of the firm business, the partnership having been dissolved by the death of Branner. In this settlement Rankin received and accepted as his share of the profits two hundred acres of land described as SE. ¼ Sec. 1, Tp. 72, R. 23, and SW. ¼ SE. ¼ Sec. 25, Tp. 73, R. 23, the same being conveyed to him by Fain and the administrator of Branner's estate. Rankin thereupon conveyed by quit claim deed to Fain all the other lands described in the mortgage.

John Branner's administrator does not answer or appear in the case.

By the final decree of the court, rendered upon the pleadings, exhibits and evidence, plaintiff's mortgage is declared to be a valid lien upon the SE. ¼ Sec. 1, Tp. 72, R. 23, and the SW. ¼ SE. ¼ Sec. 25, Tp. 73, R. 23, and defendants Lockhard & Ireland's judgment to be a prior lien upon all of said lands, (except the SW. ¼ SE. ¼, Sec. 1, Tp. 72, R. 23,) and paramount to plaintiff's mortgage as to these lands. It is adjudged that the mortgage is not a lien upon the N. ½ NE. ¼ and the NE.

¼ NW. ¼ Sec. 1, Tp. 72, R. 23; as to these lands the mortgage is canceled. The mortgage was foreclosed and the land ordered to be sold, and Lockhard & Ireland's judgment was directed to be first satisfied out of the proceeds of the sale. Plaintiff and Elizabeth E. Rankin appeal.

*Stuart & Bartholomew*, for plaintiff.

*J. C. Mitchell*, for defendants Elizabeth E. and E. C. Rankin.

*Perry & Townsend*, for defendant Fain.

*W. S. Dungan* and *Chaney & Beeson*, for defendants Lockhard & Ireland.

BECK, J.—In order to settle the rights of the several parties to the suit, each branch of the case must be separately considered. The plaintiff complains because his mortgage is not declared a lien prior to the judgment of Lockhard & Ireland. Upon the decision of this point he is in contest with these parties. He claims also that his mortgage should bind the N. ½ NE. ¼ and NE. ¼ NW. ¼, Sec. 1, Tp. 72, R. 23, which the Circuit Court held was not subject thereto. Here the controversy is between plaintiff and defendant Fain. The intervenor, Elizabeth E. Rankin, insists that she is entitled to a homestead in SW. ¼ SE. ¼, Sec. 1, Tp. 72, R. 23, which the court denied to her. Upon the question of her homestead, she and plaintiff are the contestants.

I. The first branch of the case involves the questions as to the priority of the lien of plaintiff's mortgage and Lockhard 1. PARTNER- & Ireland's judgment. The mortgage was filed ship : interest in real estate. for record September 6, 1870. A transcript of the judgment was filed in Lucas county, June 2, 1870. In point of time the judgment is prior. But counsel for plaintiff insist that, as Rankin, at the time the judgment was spread on the record of the county, had no such interest in the lands as would be reached by the lien of the judgment—that his only interest was that of a partner in the assets and property of the

firm, which must be regarded as personal property, and therefore not affected by the lien of the judgment. Counsel have argued the question of law thus presented with great industry and research, and have at least demonstrated the want of harmony in the authorities, and the impossibility of deducing therefrom rules that will accord with all. While upon many points there is a disagreement or want of entire harmony, we think the weight of the authorities is to this effect: Real estate held by a partnership is to be regarded as the property of the firm, as to the creditors and all persons dealing with it, where necessary to protect their rights. The partner is to be regarded in such cases as holding only an interest in the stock or capital of the partnership, which is personal property. If the business of the firm be in operation or there be liabilities outstanding against it, the partners have not an interest in its lands or other assets that may be regarded as property; their interest is in the stock of the firm, whatever upon final settlement may be due them. *Meeley v. Wood*, 71 Pa. St., 488, and cases cited; 1 Washburn on Real Property (3 ed.), 574, and cases cited; Lindley on Partnership (Am. ed.), 463, and authorities cited; 1 Am. Leading Cases (notes to *Coles v. Coles*), 487–492.

When the business of the partnership is closed, and its debts are paid, and there are no equities in favor of third persons requiring real estate of the firm to be held subject to the foregoing rule, the partners, or their representatives, hold a direct interest therein, and, as between them, it is to be regarded as real estate, and subject to all the rules applicable thereto. In such cases it is to be regarded as the real estate of the partner in favor of his individual creditor.

The conversion of real estate into personalty under the rule first above stated, is a device of equity in order to effectuate the settlement of partnerships, and to devote all their property to the payment of the firm debts, a result highly equitable, which the courts will never fail to attain. The reason of the rule ceasing in the absence of creditors of the firm, or others having like equities, the rule itself should no longer be applied. Hence the exception we have just stated. *Wilcox*

*v. Wilcox,* 13 Allen, 252; *Buchan v. Sumner,* 2 Barb., Ch., 165; *Shearer v. Shearer,* 98 Mass., 107. See *Appeal of Foster,* decided by Supreme Court of Pennsylvania, found in Am. Law Register of May, 1874, with notes. The following authorities also support our conclusions: *Goodwin v. Richardson,* 11 Mass., 469; *Peck v. Fisher,* 7 Cush., 386; *Ensign v. Briggs,* 6 Gray, 329; *Whitman v. Boston, etc., R. R. Co.,* 3 Allen, 133; *Collumb v. Read,* 24 N. Y., 505; *Cader et al. v. Huling,* 27 Penn., 84; *Jackson v. Stanford,* 19 Ga., 14; *Green v. Graham,* 5 Ohio, 264.

It is not claimed that at the date of the recording of Lockhard & Ireland's judgment there existed any debts against the partnership of which Rankin was a member, or that it was engaged in business, or that any one held equities against it. The business had been closed for years as to the purchase of lands, and all that was wanted to put the firm out of existence was a settlement between the partners. The time limited in the contract creating the partnership had long since expired. Equity for no purpose could apply the doctrine of conversion; no one in whose behalf it is enforced at the time existed. It is, therefore, not a rule by which the rights of the parties are to be determined. The defendant Rankin must be regarded, therefore, as holding an equitable interest in the lands in controversy. Upon it the lien of Lockhard & Ireland's judgment attached. Rev., § 4105, 29 p. 8. It was prior in time to plaintiff's mortgage.

II. We are next to determine whether plaintiff's mortgage binds the N. ½ NE. ¼, and NE. ¼ NW. ¼, Sec. 1, Tp. 72, R. 23. These lands were either patented to Rankin by the United States, or held under contract to convey to him by Branner about three or four years after the formation of the partnership. He claims that they were his individual property while Fain insists they were held by or for him in trust for the firm. Upon the final settlement of the firm business Rankin conveyed these lands to Fain, who claims this was done because they were firm lands or were purchased and paid for by Rankin with the intention that they should be held as such and take the place of other firm lands which had been

conveyed to Rankin or which, in the language of the record, had been received by him. On the other hand it is insisted that they were transferred to Fain to enable Rankin to make good his partnership liability, he having long before received an advance of a part of the lands purchased by the firm, or in some other way it became necessary for him to convey his own land in order to effect the settlement. Here is a question of fact, namely: Were these lands the property of the firm? We think the preponderance of the evidence is to the effect that they were not. They were purchased by Rankin in his own name about the time or not long after the lands of the firm were purchased, a part of them of one of the partners and the rest, as we understand the record, were paid for with money borrowed from the same person. The purchase was certainly known by one of the partners, if not by both, who for years made no complaint of the act, though if the lands were really partnership property, the transaction was directly in violation of the written agreement under which the firm existed. Rankin occupied, improved and claimed the lands as his own and swears positively that that they were not purchased as partnership property. We think that the facts above stated strongly corroborate his testimony which is not overcome by the evidence of the other party. We, therefore, think the lands mentioned are subject to the mortgage and the court ought to have adjudged accordingly. If Rankin purchased and paid for these lands intending that they should become at once partnership lands, it seems unaccountable that the purchase was made in his own name through one of the partners, who furnished the money to enter the lands and assigned to him the duplicate of one tract and executed a bond to convey to him the others. Certainly these transactions are inconsistent with the theory that the parties intended these lands should become the property of the partnership.

But it is insisted that, if it be conceded these lands were in fact purchased by Rankin in his own name and with his own money, he intended and actually agreed with his partners that they should take the place of other lands he had received from the firm, which had been conveyed to him and after

their sale by him, the proceeds thereof were applied to his own use. Upon the question of fact whether there was an intention and understanding on the part of Rankin and his partners to this effect, the evidence is conflicting. But for our present purpose it may be conceded that the testimony warrants such a conclusion. In this view of the facts the case is this: Rankin held the legal title to the land. He agreed verbally that it should be regarded as the property of the firm, but no conveyance was made by him to his partners. He executed the mortgage to plaintiff who, it is not denied, had no notice of the arrangement between Rankin and his partners, or of any claim set up by them to the land. Now what are the rights of the parties? The partners, Fain and Branner, and those claiming under them, hold an equity, and nothing more, in the land. Even if it be admitted that Rankin, by the arrangement with the partners, became their trustee of the lands, which can hardly be claimed, the trust was unknown to plaintiff. The trust relation that is claimed to exist arises upon an express contract, yet there is no evidence in writing

3. MORTGAGE: notice. to support it. But, waiving the question whether the trust, if one existed, with which Rankin was charged, was express or resulting, the fact is undeniable that plaintiff, Hewitt, had no notice of its existence. Having acquired his mortgage lien for a valuable consideration and without notice of the equity claimed of Fain and Branner, or of the alleged trust, his rights are superior to theirs. A mortgagee in this State, as to the interest he holds in the lands mortgaged and notice of prior claims or a conflicting title, is regarded as a purchaser. *Porter et al. v. Green et al.*, 4 Iowa, 571. *Bona fide* purchasers for a valuable consideration, without notice, may acquire an interest in lands free

4. CONVEY-ANCE: equity. from any equity or trust with which it was charged in the hands of the grantor. Story's Eq., § 1258. This is a familiar elementary rule.

The fact that in the partition of the lands of the firm among the partners, these lands were regarded as firm property cannot affect the mortgagee's rights, which were acquired before the partition, to which he, in no sense, was a party and

never consented. Neither does the fact that the mortgage covers the lands which, in the partition, were allotted to Rankin, as well as those in question, defeat Hewitt's lien. If that were so, the mortgagor, and those claiming an equity against him, could defeat the mortgagee's security, or change and modify it at their pleasure. The mortgage covered more than 800 acres of lands, all of which were held in the name of Fain or Branner for the use of the firm, except the tracts involved in the question now under consideration which were in the name of Rankin. Hewitt had no notice of any claim of the firm upon the lands last referred to. Now, it will hardly be claimed that by an arrangement of the partners Hewitt's lien, which up to that time was good against the Rankin lands, could be defeated as to them, and made good as to other real estate, and that too, without Hewitt being a party to the arrangement or assenting thereto. By vesting Rankin with the title to lands that he did not own, they may have made Hewitt's lien thereon good; but they could not defeat a valid lien on other lands by that act. But it is said that as Hewitt's mortgage is made valid on other lands, in the place of the lands in question, he is not prejudiced. A state of facts might exist where others, if permitted so to do, could defeat a mortgagee's lien on one tract of land, and transfer it to another, without his consent, and the mortgagee would suffer no prejudice in the value of his security. But the law will permit no such thing. The binding force of the mortgage, security of rights free from interference of others, and numerous other principles of law and equity forbid it.

But it cannot be claimed that Hewitt suffers no prejudice. In truth, unless the mortgage be enforced againist the lands in question, his security is worthless. The lands set apart to Rankin by the partition and conveyed to him thereunder, are wholly covered by Lockhard & Ireland's claim and Mrs. Rankin's homestead claim. These claims are paramount to plaintiff's mortgage; therefore, unless plaintiff's mortgage be enforced against the lands now in question, his security will prove worthless.

Fain and Branner may suffer by the transaction with Rankin.

But they had it in their power to protect themselves. When the partition was made, Hewitt's mortgage and Lockhard & Ireland's judgment were of record, of which they are charged with notice. With notice of these incumbrances, they accepted Rankin's deed to them for the lands involved in this branch of the case, and conveyed to him other lands which, subsequently to the partition, were levied upon and sold under Lockhard & Ireland's judgment. It would be in conflict with all principles of equity to defeat plaintiff's lien acquired in good faith, for a valuable consideration and without notice of the equities set up against it and send him from the court utterly remediless to protect men, who, through want of prudence and without inquiry, have accepted a deed of the land upon which plaintiff's prior mortgage rests. They in fact are not made to suffer because plaintiff's mortgage is upon this land, but by their unwise act in accepting it in lieu of other property; their own act is the cause of what they will suffer. As they were charged with notice of plaintiff's mortgage and as plaintiff had no notice of their equities, their claim and rights are in equity regarded as subordinate to his.

III.   We are next to inquire whether Elizabeth E. Rankin and her husband are entitled to a homestead in the SW. ¼, SE. ¼, Sec. 1, Tp. 72, R. 23, and can hold that tract of land under this claim. It is a part of the lands conveyed to Rankin upon the settlement of the partnership as his share of the profits, and the title was in the other partners for the use of the firm.

5. HOMESTEAD: tenant in common.

We have held that at the date of the execution of the mortgage, Rankin held an interest in the partnership lands which would be subject to a judgment lien—that his interest was in the real property of the firm, not in its stock or capital. He therefore held an equitable title to an undivided interest in the lands. He was, as between themselves, a tenant in common with his co-partners. Under this title and tenancy he held possession of the land and occupied it as a homestead. His tenancy in common does not defeat his homestead claim. *Thorn v. Thorn*, 14 Iowa, 49. And the fact that he held the equitable title only cannot affect it. Certainly a homestead

may be held under such a title. We conclude, therefore, that as Rankin showed occupation of the land as a homestead at the date of the execution of the mortgage, the land is not subject thereto and the decree of the Circuit Court ought to have so declared.

A decree will be entered in this court conforming to this opinion, which will modify the decree of the Circuit Court so far as to subject to plaintiff's mortgage the N. ½, NE ¼, and NE. ¼, NW. ¼, Sec. 1, Tp. 72, R. 23, and to release therefrom Rankin's homestead; viz: SW. ¼ SE. ¼, Sec. 1, Tp. 72, R. 23. The decree of the court below in other respects will be affirmed.

MODIFIED AND AFFIRMED.