Paige v. Paige et al.

---

## PAIGE v. PAIGE ET AL.

1. **Partnership:** FIRM PROPERTY DEEDED TO PARTNERS: RESULTING TRUST: PAROL EVIDENCE: DOWER TO WIDOW OF PARTNER: RIGHTS OF ADMINISTRATOR. Where real estate is purchased by a firm, with partnership money, and for use in the partnership business, but is deeded to the partners in their individual names, *held* that the real estate still belongs to the firm; that the individual partners only hold the title in trust for the firm; and that such trust, being an implied or resulting one, may be shown by parol testimony. Also, that, after the dissolution of the firm by the death of a partner, the firm and the individual partners all being insolvent, the widow of the deceased partner cannot recover a distributive share of the realty; and that the administrator of the deceased partner cannot, while the firm creditors are unsatisfied, appropriate a share of the property to satisfy the creditors of the decedent, even though they may have become creditors on the faith that the decedent had an individual interest in the property. (See opinion for authorities cited.)

*Appeal from Scott Circuit Court.*

SATURDAY, MARCH 12.

THE plaintiff in this action is the widow of Simon B. Paige, deceased. She claims that her husband died seized

of certain real estate in Scott county, in which she is entitled, as widow, to a distributive share or dower interest, and this suit was brought to have the same set apart to her as is provided by law. The heirs of Simon B. Paige, the administrator of his estate, and the surviving member of a partnership known as the firm of Paige, Dixon & Co., and one Henry Brown, a creditor of said firm, were all made parties defendant to the action. Answers were filed, and, upon a hearing of the cause, a decree was entered against the plaintiff, and she appeals. Charles S. Watkins, administrator of the estate of the decedent, also appeals.

*Bills & Block,* for appellants.

*Davison & Lane,* for Paige and others, appellees.

*Stewart & White,* for Brown, appellee.

ROTHROCK, J.—I. The property in controversy is certain real estate in the city of Davenport, upon which there is situated a saw mill, planing mill, etc. It is known as the "Davis Saw Mill Property," and was formerly the property of John L. Davis, deceased, who owned the same at the time of his death. On the second day of February, 1880, F. H. Griggs, the administrator of Davis, conveyed the real estate in controversy to said Simon B. Paige and John A. Paige. There is no question about the validity of this conveyance. By its terms it is a conveyance to the two grantees as individuals, and, if the deed alone were to be considered, it would appear that Simon B. Paige and John A. Paige each owned the undivided one-half of the property; and, as there is no dispute that the plaintiff was the lawful wife of Simon B. Paige at the time of his death, it would follow that she is entitled to dower in the undivided half of the property. But the defendants claim that the real estate was not the individual property of the grantees in the deed, and that it was part of the assets of a partnership of which said grantees were members, and that said partnership was insolvent when

Simon B. Paige died, and that all of the property of the partnership would be insufficient to pay its indebtedness.

It is not disputed that there was a partnership of which the said grantees in the deed were members, and that said partnership was insolvent when Simon B. Paige died. The ultimate question in the case, then, is, was the real estate in question partnership property? If it was, the plaintiff is not entitled to dower. If it was the individual property of Simon B. Paige and John A. Paige, the plaintiff is dowerable therein. In order to a proper consideration of this question, it is necessary to recite certain facts which appear in the record.

It appears that for a number of years prior to the purchase of the property in question Simon B. Paige and John A. Paige had been engaged in business in partnership, under the firm name of " S. B. & J. A. Paige." For some sixteen years they were engaged in the general merchandizing business. Afterwards they operated in pine lands, getting out timber and pine saw logs. They were so engaged up to the time of the death of S. B. Paige, and their place of business was at Oshkosh, Wisconsin. They purchased the property in controversy, and took the conveyance therefor, on the second day of February, 1880. The evidence shows that at the time of the purchase a new partnership was in contemplation, which firm was to operate the saw mill, planing mill, etc., so purchased, and on the sixth day of February, 1880, written articles of partnership were executed, by which S. B. and J. A. Paige and R. F. Paige and E. W. Dixon associated themselves as partners, under the firm name of Paige, Dixon & Co. The following is a copy of the agreement for a partnership:

" Articles of agreement made this sixth day of February, A. D. 1880, between S. B. & J. A. Paige, of the city of Oshkosh and state of Wisconsin, party of the first part, and R. F. Paige and E. W. Dixon, of the city of Davenport, state of Iowa, parties of the second part, witnesseth that both par-

Paige v. Paige et al.

ties, having formed a copartnership under the firm name of Paige, Dixon & Co., each of the four named persons having equal interest in the profit and losses in the business to be conducted by said firm, said business being the manufacturing of lumber, timber, shingles and lath in the mill known as the 'Davis mill,' and in said city of Davenport and state aforesaid. It is hereby agreed to by the said R. F. Paige and E. W. Dixon, of the second part, together and each by himself, that in consideration of the party of the first part agreeing, and do hereby bind themselves, to sell and deliver to each of the aforesaid R. F. Paige and E. W. Dixon, by quitclaim deed, (free of encumbrance arising from any act of the said S. B. & J. A. Paige,) of an undivided one-fourth part of said Davis Mill property, when each of them separately shall have paid to the party of the first part the one-fourth part of the sum of thirty-six thousand ten and sixty-five one-hundredths dollars, ($36,010.65,) which, being for the costs of said property, $32,250, and for insurance on the same, $660.50, with expenses paid in making the purchase of said property, $100.15, making in all the said sum of $36,010.65, together with interest from the second day of February, A. D. 1880, at the rate of eight per cent per annum, interest payable annually; that they, the said R. F. Paige and E. W. Dixon, are to give their entire time and service to the business aforesaid, and for the benefit of the firm of Paige, Dixon & Co., without any compensation during the continuance of said firm. The said S. B. & J. A. Paige are to receive no compensation for any services they may render to said firm, or for expenses when making voluntary visits from Oshkosh to Davenport, but such times as working up, examining, and purchasing logs they shall be paid all expenses of travel and otherwise, and same shall be charged up to the expense account of said firm of Paige, Dixon & Co.; and the expenditure of any considerable amount of money, also the purchase of any considerable amount of logs, shall be left to the decision of the said S. B. & J. A.

Paige, as also all matters of importance; and the said R. F. Paige and E. W. Dixon are each privileged to draw out from the moneys and credits of said firm of Paige, Dixon & Co., for the purpose of expenses only, a sum not exceeding one hundred and fifty dollars per month; and, at the expiration of one year from said second day of February, A. D. 1880, that the total amount so drawn out by each of said R. F. Paige and E. W. Dixon shall be deducted from his one-fourth interest in the net profits of the business of said firm of Paige, Dixon & Co. for said term, and the remaining part shall be paid to said S. B. & J. A. Paige, until each, the said R. F. Paige and the said E. W. Dixon, shall have paid in full his one-fourth part of the said thirty-six thousand ten and 65-100 dollars, ($36,010.65,) together with interest as aforesaid; and it is further agreed by both parties that said mill shall be kept in as good repair as it is now in, and that on or before it is set to running there shall be not less than ten thousand dollars ($10,000) more insurance put upon the said mill, and continued on the same, in the name of S. B. & J. A. Paige, the expenses thereof to be paid by the said firm of Paige, Dixon & Co., who also are to pay all taxes, and all expenses of whatever kind and nature, during the existence of said firm of Paige, Dixon & Co., and the same to be charged to the expense account of said company; and at the expiration of the insurance now upon said mill property, the firm of Paige, Dixon & Co. are to insure the same for a like amount, which is fifteen thousand dollars ($15,000) on mill and contents, the insurance to be in the name of S. B. & J. A. Paige, the expenses thereof to be paid by the firm of Paige, Dixon & Co.; and at no time shall the insurance be less than twenty-five thousand dollars, ($25,000,) so long as it remains the property of said S. B. & J. A. Paige; and also it is agreed by said R. F. Paige and E. W. Dixon that the said firm of Paige, Dixon & Co. shall carry at all times a good and sufficient amount of insurance upon all manufactured lumber, shingles, lath and timber, so fast as it is

made and accumulates. All expenses·of selling, of entertaining customers, and any expenditures of money for the benefit of carrying on the business, shall be charged in the expense account of Paige, Dixon & Co.

"In witness whereof we have hereunto set our hands and seals.　　　　"S. B. & J. A. PAIGE. [Seal.]

"R. F. PAIGE. [Seal.]

"E. W. DIXON. ·[Seal.]

We have set out the foregoing agreement for a partnership *in extenso*, for the reason that it appears to us to have an important bearing upon the main question in the case. The resident members of this partnership took immediate possession·of the property, and operated the mills, and expended a large amount of money of. said partnership in making improvements thereon. In August, 1881, said R. F. Paige died. An administrator was appointed, and, the personal estate of said decedent being insufficient to pay his debts, upon proper application being made to the circuit court, the administrator was ordered to sell, and did sell, to Simon B. and John A. Paige the interest owned by said decedent in said real estate under the articles of partnership above set out. After the death of R. F. Paige, the business was conducted under the same firm name; S. B. & J. A. Paige having three-fourths interest, and E. W. Dixon a one-fourth interest, and it so continued until the death of Simon B. Paige. The plaintiff was married to the deceased within a month or two before his death. The partnerships of S. B. & J. A. Paige, and Paige, Dixon & Co., and all of the individual members thereof, were insolvent at the date of the death of S. B. Paige.

The parol evidence in the case shows quite conclusively that, at the time the conveyance of the property was made, S. B. Paige stated that the purchase was made by the partnership of S. B. & J. A. Paige, and the property belonged to the partnership, and he desired the deed to be made in the name of the partnership; but that, under the advice of coun-

sel, it was made in the individual names of the members of the firm, so that, if the property should be subsequently sold, it would not be necessary to prove who were the proper parties to join in a conveyance.

This evidence, and all of the other parol evidence tending to show that the property was purchased and paid for by the partnership, is objected to by counsel for the plaintiff, upon the ground that a written conveyance of real estate cannot be varied by parol. It is insisted that such evidence is incompetent, under the statute, which provides that "conveyances to two or more, in their own right, create a tenancy in common, unless a contrary intent is expressed." Code, § 1939. And the following provisions of the Code are also relied upon: Section 1934: "Declarations or creations of trust or power, in relation to real estate, must be executed in the same manner as deeds of conveyance; but this provision does not apply to trusts resulting from the operation or construction of law." Sections 3663 and 3664 provide that no evidence of any contract for the creation or transfer of any interest in lands (except leases for a term not exceeding one year) shall be competent, "unless in writing, signed by the party to be charged."

Appellant concedes that, if the property had been paid for with partnership money, and one of the partners had taken the title to the whole, there would be a resulting trust for the benefit of the firm. But it is claimed that, as each received the legal title to just the share he was equitably entitled to, there can be no resulting trust. The evidence in the case shows quite satisfactorily that payment for the property was made, not with the money of each individual partner, but with the undivided money of the partnership. It seems to us it is wholly immaterial whether the conveyance was made to one or both of the partners. The law recognizes the partnership as a person distinct from the individual members of the firm, and, this person or partnership having paid

its money for the property, there was a resulting trust in its favor, no matter in whose name the title was taken.

In the notes to *Coles v. Coles*, 1 Amer. Lead. Cas. (Hare & W.) 487, it is said: "If land is bought with partnership funds, and is brought into the business of the firm and used for its purposes, it will be considered as partnership stock, *in whose name soever the legal title may be*, unless there be *distinct evidence of an intention to hold it separately*, such as an express agreement in the articles of co-partnership, or at the time of the purchase, or the fact that the price is charged to the partners respectively in their several accounts with the firm; for such arrangements would •operate as a division and distribution of so much of the funds, and each would take his share divested of any *implied trust;* but the mere circumstances that the conveyance was to them *expressly, as tenants in common,* would not, of itself, be sufficient to rebut the trust."

In 2 Story, Eq., § 1207, it is said: "Where real estate is purchased for partnership purposes, and on partnership account, it is wholly *immaterial*, in the view of a court of equity, *in whose name or names the purchase is made* and the *conveyance taken,*—whether in the name of *one* partner, or of *all* partners; whether in the name of a stranger alone, or a stranger jointly with one partner. In all these cases, let the *legal* title be vested in whom it may, it is in equity deemed partnership property, not subject to survivorship, and the partners are deemed the *cestuis que trust* therefor."

This court has frequently held that where land is purchased with partnership funds, and intended to be used for partnership purposes, it is to be treated as personal assets of the partnership. *Evans v. Hawley*, 35 Iowa, 83; *Hewitt v. Rankin*, 41 Id., 35; and other cases. In such case the trust is not an express one, but is implied, or results from the operation or construction of the law, and is within the exception named in section 1934 of the Code, and such a trust may be shown by parol evidence. *York v. Clemens*, 41

Iowa, 95; *Cotton v. Wood*, 25 Id., 43; *Fairchild v. Fairchild*, 64 N. Y., 471.

The cases of *Hale v. Henrie*, 2 Watts., 143; *Kramer v. Arthurs*, 7 Pa. St., 165, and *Ridgway's Appeal*, 15 Id., 177, hold that, " where partners intend to bring real estate into the partnership, their intention must be manifested by deed or writing placed on record, that purchasers and creditors may not be deceived." This rule is doubtless correct, so far as the rights of innocent purchasers without notice are involved; but this court is committed to the doctrine above announced, that a purchase of real property with partnership funds, and investing the title in a person or persons other than the partnership, creates a resulting trust in favor of the partnership, and the facts necessary to establish the trust may be shown by parol.

The evidence that the property involved in this case was paid for by the firm of S. B. & J. A. Paige is clear and satisfactory. It consists of the declaration of S. B. Paige, made when the deed was executed, and the recitals in the articles of partnership entered into within a few days after the deed was made, and the subsequent acts of both of the grantees in the deed in the management and use made of the property.

II. The defendant Brown is a creditor of the firm of Paige, Dixon & Co., and attached the property in controversy in an action upon his claim. His counsel submitted an argument in the cause, the drift of which seems to be a claim that he, as a creditor of that firm, is entitled to a preference over the creditors of the firm of S. B. & J. A. Paige in the property in controversy. It would be improper to determine that question in this appeal.

III. The administrator of S. B. Paige appealed, and claims that the debts against the estate were contracted while the title to the property was in decedent, and on the faith and credit of the same. He insists that the equities of these individual creditors should not be ignored for the benefit of

the firm creditors. But, as the property in controversy is assets of the partnership, it is first liable to the payment of the partnership debts, and a creditor of one of the firm has no claim thereon until such debts are paid. *Evans v. Hawley*, 35 Iowa, 83.

We unite in the conclusion that, as it is conceded that both of the partnerships and all of the surviving members thereof are insolvent, the plaintiff is not entitled to a dower interest in the property in dispute.

AFFIRMED.