## FORDYCE v. HICKS *et al.*

**Homesteads: PARTNERS: TENANTS IN COMMON: FRAUDULENT CONVEYANCE.** A homestead interest cannot be acquired in real estate which is strictly partnership assets, as against the creditors of the firm. (See citations in opinion.) But in this case two brothers, one married and one single, owned and cultivated a large tract of land jointly, and on one forty-acre tract of it they had their homestead,—the unmarried brother making his home with the married one. They entered into a contract with one T. to furnish him money to carry on a general cattle business on his farm for one-half the profits, and for use in such business they borrowed of plaintiff's intestate a sum of money for which judgment was rendered against them. The cattle business was a failure, and all

Fordyce v. Hicks.

the land except the homestead was sold to pay debts arising out of said business. The married brother died, and the unmarried one conveyed his undivided one-half of the homestead forty to the widow, who continued to reside thereon, and this action is to subject the homestead to the judgment in favor of the plaintiff's intestate. *Held—*

(1) That the homestead was not property used in the partnership business of the brothers so as to entitle creditors of the firm to claim it as assets.

(2) That, though the brothers owned it as tenants in common, the married brother had a homestead interest in it. (See *Thorn v. Thorn,* 14 Iowa, 49, and *Hewitt v. Rankin,* 41 Iowa, 35.)

(3) That, since the conveyance of the single brother's undivided one-half to the widow may have been in pursuance of an equitable adjustment of property rights, it cannot be decreed to have been done to defraud creditors, in the absence of evidence affirmatively establishing that fact.

*Appeal from Monroe District Court.*—HON. DELL STUART, Judge.

FILED, MAY 26, 1890.

THIS is an action in equity by which the plaintiff seeks to subject certain land to the payment of a judgment rendered in favor of Melvina Bone, his intestate, and against T. S. Tharp and William Hicks, and the administrator of Aaron Hicks, upon a certain promissory note executed by said Tharp and by William Hicks and Aaron Hicks. Upon a full trial on the merits, a decree was entered for the defendants, and the plaintiff appeals.

*Henry L. Dashiell,* for appellant.

*T. B. Perry,* for appellees.

ROTHROCK, C. J.—It appears from the evidence that more than forty years ago Aaron Hicks and William Hicks jointly entered and purchased from the United States about eight hundred acres of land in Monroe

county. They were brothers. Aaron was married, and
William was unmarried, and he has ever since so
remained. They took possession of the land, and
improved it; built a dwelling-house and other buildings
on the northwest quarter of the northeast quarter of
section 32, in township 73, in said county; the said tract
being part of the joint purchase. Aaron and his wife,.
Elizabeth Hicks, one of the defendants herein, took up
their residence in the house on the forty acres above
described. William Hicks lived with the family, and
the two brothers improved all of the land together.
Their land was of excellent quality, and they in time
became prosperous and well-to-do farmers. They con-
ducted their business jointly in the name of A. & W.
Hicks. In the year 1879, they entered into a contract
with T. S. Tharp, by which they agreed to furnish said
Tharp with money to buy cattle, and keep, graze and
care for them on Tharp's farm, and at proper times to
sell the same. In other words, the agreement was to
furnish Tharp money to carry on a general cattle busi-
ness, for one-half the profits arising therefrom. It is
not necessary to. set out this contract at length. It
appears to be a partnership, and is signed by Tharp,
William Hicks, Aaron Hicks and A. & W. Hicks.
Tharp so conducted the business that there were large
losses, and Aaron Hicks and William Hicks became
liable to pay a large amount of money. In short, they
became bankrupt. While this contract was in force,
and on the seventh day of January, 1882, Tharp bor-
rowed two thousand dollars of Melvina Bone, the plain-
tiff's intestate, and a promissory note was given for the
same, signed by T. S. Tharp, Aaron Hicks and William
Hicks. There is some conflict in the evidence whether
this borrowed money was used in the cattle business.
under the contract with Tharp. Tharp testified as a
witness that it was so used. But it appears that Aaron
and William Hicks signed the note as security for
Tharp. When judgment was rendered on the note it
was found that they were sureties, and there is evidence

to the effect that Melvina Bone knew they were sureties.
The form of the note also tends to show that it was not
a partnership transaction, because the Hicks brothers
were to furnish the money to carry on the business.
Tharp was not required to borrow from any one for that
purpose. When the Hicks brothers were confronted
with their enormous debts, they conveyed all of their
lands, except the tract above described, to one Douglas,
a son-in-law of Aaron Hicks, and took a mortgage back
for the purchase money. This transaction was held
invalid, and all of the land conveyed was sold in pay-
ment of judgments in favor of their creditors. In 1883,
William Hicks conveyed to Aaron Hicks the undivided
half of the tract · above described as the homestead
forty acres. Aaron Hicks died on the twenty-sixth day
of November, 1884, and the defendant, Elizabeth Hicks,
his widow, has continued to reside on the forty acres in
controversy to the present time, and William Hicks
continues to be a member of the family. It is claimed
in behalf of appellant that the land owned jointly by
Aaron and William Hicks was partnership property,
and that Melvina Bone, in loaning her money, became a
creditor of the firm of A. & W. Hicks, and that the
homestead is not exempt from the payment of the debt
due to her. This is the first question for determination.
It is true it has been held that, where real estate is
owned by a partnership as partnership property, it is to
be treated as assets of the firm, so far as the rights
of creditors of the firm are concerned, and that a home-
stead interest cannot be acquired nor held therein.
*Hewitt v. Rankin,* 41 Iowa, 35; *Drake v. Moore,* 66
Iowa, 58; *Hoyt v. Hoyt,* 69 Iowa, 174; *Burnside v.
Merrick,* 4 Metc. 537; *Dyer v. Clark,* 5 Metc. 562.

An examination of these cases will show that the
partnerships involved were either partnerships for the
very purpose of buying and selling lands, or the prop-
erty consisted of buildings used in part for mercantile
purposes, or where the lands were expressly declared
by the partners to belong to the firm as a firm. In such

cases, the land is to be regarded as assets of the partnership, and the creditors have the same right to subject the same to the payment of their claims against the firm as they have to resort to the goods on the shelves of a firm of merchants, or the stock of any other partnership. But the evidence in this case does not establish any such state of facts. Aaron and William Hicks entered the land jointly. They held it as tenants in common. By their labor and money they put it in cultivation, and for forty years or more they lived upon it,—raised grain and stock, and sold it; accumulated money, and loaned it. This is all that appears tending to show that Elizabeth Hicks, the defendant, and the wife of Aaron Hicks, has no homestead right in the land. Moreover, the arrangement or contract with Tharp did not contemplate that the land was to be in any just sense assets of any partnership. The borrowing of the money from Melvina Bone had no more effect upon the homestead right than if one owning a homestead in severalty should borrow money or engage in a business enterprise.

It is further claimed that the deed from William Hicks to Aaron Hicks was fraudulent as to creditors, and that the undivided half of the land should be subjected to the payment of plaintiff's claim. It was held in *Thorn v. Thorn*, 14 Iowa, 49, and in *Hewitt v. Rankin*, 41 Iowa, 35, that a tenant in common may claim and hold a homestead in undivided real estate. It appears from the evidence that, during the long period the family have occupied the land, it has been regarded as a homestead. It could not have been alienated without the consent of the defendant Elizabeth Hicks. If William Hicks and Aaron Hicks had made an amicable partition of the land, and the whole title in the homestead had been conveyed to the former, no creditor would have any just cause of complaint, no matter what they intended by their conveyance. They did not partition, but they conveyed it all to Douglas but the homestead, and what was conveyed was applied in payment of the claims of creditors. If this was

under an arrangement by which William Hicks conveyed the interest he had in the homestead property to Aaron Hicks, no creditor has the right to complain. It may have been an arrangement between the two brothers by way of partition and for a sufficient consideration; and, as the plaintiff attacks the conveyance, it is incumbent on him to show its invalidity. We think the decree of the district court should be

AFFIRMED.