HUGO R. LAMP et al., appellants, v. LEONA LEMPFERT, executrix of estate of Emil W. Lamp, deceased, appellee.

No. 52218.

NOVEMBER 15, 1966.

Lambach, Christiansen, Stevenson & Goebel, Carl H. Lambach and Margaret Stevenson, all of Davenport, for appellants.

Lane & Waterman and Donald H. Sitz, both of Davenport, for appellee.

SNELL, J.—This is an action brought to determine whether

certain assets inventoried as assets in the estate of Emil W. Lamp, deceased, were in fact assets of a partnership known as Hugo R. Lamp and Company. There are also claims and counterclaims for accounting. It is a case with multiplicity of claims and paucity of evidence. There are no books of account or partnership records of any kind except copies of income tax reports. There are no individual books of account. There is no record of any accounting for thirty years and no distinguishable pattern or system of division of receipts or disbursements. Two of the three partners are now dead and the testimony of the surviving partner is limited by the dead man statute.

In the early 1930s Emil W. Lamp, unmarried, Hugo R. Lamp, widower, and Margo Lamp, daughter of Hugo, each owned farmland acquired by inheritance. They formed a three-member partnership using the name "Hugo R. Lamp & Co." for the operation of the farmland. The partnership had no bank account and kept no records or books of account. Each partner had an individual bank account. As far as appears from the record there was never any attempt to divide or apportion either receipts or disbursements. For no reason now appearing receipts were deposited in one or another of the individual accounts without regard to the source. Taxes and expenses were paid and purchases made with the same disregard of equality or ownership. The three partners lived together in the house on Hugo's farm and continued to do so until Emil's death. Emil had a safe-deposit box in the bank at Walcott in which securities were kept. Emil also kept cancelled checks in grocery boxes stored in his room.

From the beginning and through the year 1955 Emil prepared and filed U. S. Partnership Income Tax returns. He also filed an individual return. The 1947, 1948, 1950 and 1951 partnership returns (1949 return is not before us) reported income from Swift & Company, Anaconda Copper Company, General Electric and Avco Manufacturing Company stock. These stocks were issued in the name of Emil W. Lamp.

In December 1953 Emil's individual tax report was subject to review and verification by the Internal Revenue Director. Under date of December 14, 1953, a letter from the office of the

Director to Emil asked for information. We quote from this letter:

"Information returns on file in this office indicates that the following dividends were paid to you during 1951.

"Swift & Company $235.00
"General Electric 285.00
"Anaconda Copper Mining Co. 350.00

"Such dividends do not appear to have been included on your return. If there is some reason for such dividends not being taxable to you, please inform us regarding the circumstances.

"Information returns submitted by the Avco Manufacturing Corporation indicate they paid you dividends of $236.24 during 1951, however, you report only $180.00. You are requested to explain this discrepancy also."

Emil answered as follows:

"Davenport, Iowa
"RFD 4
"Dec 22, 1953

"U.S. Treasury Department
"Des Moines, Ia.
"Mr. Fred A. Holt

"This is in reply to your letter of the 14. I Emil W. Lamp, am in partnership with Hugo R. Lamp and Margo Lamp, we filed a form 1065 Partnership return under the name of Hugo R. Lamp & Co.

"The following stocks were bought with partnership money and the dividends are used for partnership expenses issued to the name of Emil W. Lamp.

"100 Swift & Co 235.00
"100 Ana Copper 350.00
"100 General Electric 300.00
"100 Avi Mfg. Co. Com 60.00
"  5 Avi Pref 11.24

"These stocks are reported on form 1065 and also on form 1040F farm schedule.

"According to figures that you sent me we have already overpaid our income tax.

"If partnership, pools, and joint ventures are illegal why are

the recipts there off [sic] stated on the income tax blanks."

It was stipulated by the parties that the words "Ana Copper" referred to Anaconda Copper Company and the words "Avi Mfg. Co." and Avi Pref" referred to Avco Manufacturing Company.

Sometime thereafter there was a conference between an agent of the Internal Revenue Service and Emil. Margo testified that she was present but took no part in the conversation. She testified over objection that the revenue agent told Emil how to report dividends and other items of receipts, disbursements and depreciation. Without considering the competence of the witness under the dead man statute or the probative value of the testimony it appears from the tax returns that during the following years there was a change in the method of reporting and the dividends from these stocks were thereafter reported in Emil's return.

Beginning in 1956 and continuing thereafter the partnership tax returns were signed by Margo. She testified that this was because of Emil's failing eyesight.

Except for the change in tax reporting there is no evidence of any change or transfer of ownership, interest therein or claim thereto by any of the parties to any of their property subsequent to 1953.

From the record and the conduct of the parties over many years we think it reasonable to assume that Margo expected to be the beneficiary of Emil's entire estate. Disappointment and frustration now appears.

Emil died testate December 30, 1961, at the age of 84. He directed payment of his debts, including mortgage indebtedness. He made two $1000 eleemosynary bequests. He gave to his brother, Hugo, all his interest in any machinery, livestock, grain or other personal property used in the operation of the farm. The scrivener testified that this was to remove any claim of interest therein by residuary beneficiaries. The will gave one fourth of the remainder to Margo and three sixteenths to each of three nephews and a niece.

The inventory filed in the estate listed shares in ten different corporations including thirty shares of Avco Manufacturing Company stock, 100 shares of Swift & Company stock, 120 shares

of Anaconda stock and 300 shares of General Electric stock. These items are traceable back to the items claimed by Emil in 1953 to be property of the partnership.. There is no admissible evidence in this record to show how Emil acquired the other items or whose money was used in their purchase.

The inventory was not filed until September 8, 1962.

On September 6, 1963, plaintiffs Hugo R. Lamp and Margo Lamp filed the present action. Hugo R. Lamp died December 24, 1964, prior to trial herein and on February 10, 1965, Margo Lamp as administratrix of his estate was substituted as party plaintiff.

The trial court found that a partnership had existed at one time but made no finding that it continued until Emil's death. The tax returns filed by the partnership show that it did in fact function as such until Emil died and we so find.

The trial court found that partnership funds were used to purchase certain stocks but that there were such inconsistencies in Margo's conduct that she had failed to establish any clear and convincing proof that the assets in question were partnership assets at the time of the death of Emil W. Lamp. We agree that for thirty years the entire course of conduct has been so inconsistent as to defy all reasoning or logical conclusions. We must rely on presumptions arising from established facts and merely dismiss unsupported claims.

I. This case is in equity. Our review is de novo. We give weight to the trial court's findings but are not bound by them. Citations are unnecessary. See rule 344(f)(7), Rules of Civil Procedure.

II. It appears without question that for many years a partnership existed. The filing of partnership income tax returns factually supports a finding that the partnership continued through the year in which Emil died. The existence of the partnership being shown the presumption is that it continues. Byington v. Woodward & Warde, 9 Iowa 360, 365; Watters v. McGreavy, 111 Iowa 538, 541, 82 N.W. 949; 12 Drake Law Review 131, 135; 68 C. J. S., Partnership, section 350.

III. Except under circumstances not appearing here death of a partner works a dissolution of the partnership.

Williams v. Schee, 214 Iowa 1181, 1186, 243 N.W. 529; 68 C. J. S., Partnership, section 337; 40 Am. Jur., Partnership, section 285; section 545.36, Code of Iowa.

IV.  Upon the death of a partner and resultant dissolution of the partnership it is the duty of the surviving partner to wind up the partnership affairs, 40 Am. Jur., Partnership, section 294; 68 C. J. S., Partnership, section 273, and make proper accounting. Fleming v. Fleming, 211 Iowa 1251, 1274, 230 N.W. 359.

██ ██ V.  "In determining what is partnership property, consideration is most strongly given to the source of the funds from which the property is acquired. It has been held in numerous cases that where property is purchased through partnership funds, even though title is taken in the name of one partner alone, the property is that of the partnership. Other consideration has been given to the general surrounding circumstances regarding the situation of the parties, the manner of keeping the accounts, how the repairs, improvements and taxes have been paid, and what has been done with the income, the use made thereof, and the like." 12 Drake Law Review, 135, 136; Todd v. Todd, 250 Iowa 1084, 96 N.W.2d 436; Smith v. Smith, 179 Iowa 1365, 160 N.W. 756; Fordyce v. Hicks, 80 Iowa 272, 45 N.W. 750; Paige v. Paige, 71 Iowa 318, 32 N.W. 360, 60 Am. Rep. 799.

The cited cases dealt with real estate but under the circumstances of the case at bar the same rule would apply.

██ Here we have Emil's statement in writing that certain shares of stock were bought with partnership funds. Except for the change in the method of reporting dividends, occasioned by an Internal Revenue agent's suggestions, there is nothing in the record to show any change in ownership. There is a presumption of continuity. 31A C. J. S., Evidence, section 124(4).

VI.  Except for the shares of stock Emil admitted were bought with partnership funds there is nothing to show how or from what funds Emil acquired his other personal assets. Suspicion that he may have acquired them with partnership funds is not enough.

Margo testified that when Emil died he was possessed of more personal assets than the other partners. Emil did some

trading on the Board of Trade and may have gained therefrom.

VII. In her testimony Margo admitted that shares in the Northwest Davenport Bank issued to her father, Hugo R. Lamp, were partnership assets.

The personal property on or used in connection with the farming enterprise was assessed to Hugo. The actual ownership would appear to have been in the partnership. However, there is no practical problem in connection therewith because Emil's will gave his interest therein to Hugo. Margo is the sole beneficiary in Hugo's estate. Emil's residuary beneficiaries have no claim to this property in any event.

VIII. Margo is the sole surviving partner and is in possession of the partnership property and whatever records there are. To the extent that there is any need for accounting it is Margo's duty to liquidate, account and distribute. See Division IV, supra.

IX. As indicated, supra, the record and the law support the conclusion that the ownership of shares of stock admittedly bought with partnership funds continued. Except for the liquidation and distribution incident thereto there is nothing in the record before us to require an accounting. Neither plaintiff nor defendant is in any position to complain about the manner or lack of distribution of income prior to Emil's death.

Since the inception of the partnership the partners jointly and severally have acquiesced in the rather unorthodox manner of doing business. Until and through 1955 Emil made the partnership tax reports. From 1956 through 1960 Margo made the reports. Emil paid the income tax on the stock dividends. Plaintiff's claim to dividends or share of income prior to Emil's death is barred by the doctrine of equitable estoppel and laches.

In Sanborn v. Maryland Casualty Company, 255 Iowa 1319, 1327, 125 N.W.2d 758, we said:

"The principles of equitable estoppel have been announced by us many times. It is based upon the idea that one who has made a certain representation should not thereafter be permitted to change his position to the prejudice of one who has relied on it." (Citations)

In the case before us Emil is dead. There are no partnership records. Margo may not now impeach her own report which claimed no interest in the dividends as such. Emil's letter to the Revenue Service, quoted supra, said the dividends, even though paid to him, were used for partnership expenses. Whether there was ever any change does not appear. We are not inclined to interfere or order a general accounting in a situation that was apparently satisfactory to the participants for nearly thirty years. There are no formal records from which to proceed. Two of the three partners are dead. Margo's testimony as to transactions or communications with former partners would face a rather formidable hurdle in the dead man statute. Margo has possession of what records there are and is in no way prevented from examination thereof, but there is no apparent reason for us to order an official "fishing expedition."

Just how Margo would enforce a claim against Emil's estate does not appear. Margo was one of the executrices in his estate. Notice to creditors was given in April 1962. She first asserted her claim by filing this lawsuit in September 1963. This was long past the time for filing claims against the estate. We need not pass on whether her claim is barred by section 635.68, Code of 1962, now section 633.410, Code of 1966. The delay, however, supports the defense of estoppel and laches.

Defendant's request for an accounting is not factually supported. The annual partnership tax reports until Emil died followed the pattern he instituted. He received and reported the dividends from the stock now in controversy. His executrix may not now complain about how he used his money. There is not a scintilla of evidence that Emil ever used his money other than as he wished or that anyone else ever had any control over his money.

X. We conclude that the following items listed in the inventory in the estate of Emil W. Lamp were in fact partnership property at the time of his death:

30 shares Avco Manufacturing Company
100 shares Swift & Company
120 shares The Anaconda Company
300 shares General Electric Company

and that the shares in Northwest Davenport Bank referred to in Division VII, supra, were in fact partnership assets.

The partnership being dissolved by death Margo Lamp is entitled to one third, the estate of Hugo R. Lamp is entitled to one third and the estate of Emil W. Lamp is entitled to one third of the items listed above in this division.

The personal property on the farms was partnership property but as indicated in Division VII presents no problem here.

Except as to the items listed in this division plaintiffs' claims are without support and the respective claims for a general accounting are without support.

There is no issue before us as to any real estate.

Costs of this litigation, not including attorney fees, should be charged one half to plaintiffs and one half to defendant.

The case is affirmed in part, reversed in part and remanded for the entry of judgment and decree in accordance herewith.— Affirmed in part, reversed in part and remanded.

All JUSTICES concur except THORNTON, J., not sitting.