MANHATTAN TRUST CO. v. SIOUX CITY & N. R. CO. (DUBUQUE & S. C. R. CO. et al., Interveners).

(Circuit Court, N. D. Iowa, W. D. June 1, 1897.)

RAILROAD RECEIVERS—RESPONSIBILITY UNDER PRIOR CONTRACTS—CROSSING OF TRACKS.

The S. Ry. Co. and the D. Ry. Co. entered into a contract by which the latter granted to the former the right to cross its tracks, and the S. Co. agreed, as a condition of the grant, that if the statutes of Iowa, in which state the lines were situated, should be so amended as to permit trains of intersecting railroads to cross each other's tracks without stopping when a safe system of interlocking switches had been constructed, the S. Ry. Co. would construct and maintain such a system at its own expense. The contract was duly executed, but not recorded. After the crossing had been built, the S. Ry. Co. mortgaged its road to secure an issue of bonds, and subsequently the road was placed in the hands of receivers under foreclosure of the mortgage. The statutes of Iowa were amended so as to permit trains to cross the tracks of other railroads without stopping where a safe system of interlocking switches existed, and the D. Ry. Co. and its lessee applied to the court to require the receivers to put in such a system. The statutes of Iowa provide that one railroad may obtain the right to cross another's track without its consent, and also that upon application to a court a system of switches at a crossing may be ordered put in, and the cost equitably apportioned among the several roads. *Held*, that the bondholders, who were equitably the real owners of the S. road, were not bound by the contract to put in and maintain switches, either as running with the land, or on the theory of a vendor's lien or of a condition of a grant, and that the court would not be justified in compelling the receivers to carry out such contract, and in throwing the whole expense of the construction and maintenance of the switch system on the bondholders, or those who might succeed to their rights.

Duncombe & Kenyon and Marsh & Henderson, for interveners.

Strong & Cadwalader and Mr. Wickersham, for Manhattan Trust Co.

Wright & Hubbard, for receivers of Sioux City & Northern R. Co.

SHIRAS, District Judge. From the record in this case, it appears that during the year 1889 the Sioux City & Northern Railroad Company was engaged in the construction of its line of railway extending from Garretson, in the state of South Dakota, to Sioux City, Iowa; that this line, as located, intersects and crosses the line of railway owned by the Dubuque & Sioux City Railroad Company at or near the town of Hinton, in Plymouth county, Iowa,—the line owned by the Dubuque & Sioux City Company extending from Dubuque to Sioux City, and having been built and in operation for 20 years or more; that on the 2d day of December, 1889, the Dubuque & Sioux City Railroad Company, as party of the first part, entered into a written contract with the Sioux City & Northern Railroad Company, as party of the second part, to the effect:

"That the party of the first part, for and in consideration of the sum of one dollar to it in hand paid by the party of the second part, the receipt whereof is hereby acknowledged, and in further consideration of the covenants of the party of the second part herein contained, hath granted, and by these presents doth grant, unto the party of the second part, upon the conditions and with the reservations hereinafter set forth, the right to lay down, maintain, and operate a single-track railway, of standard gauge, over and across the right of way and main track of the party of the first part, at a point in the northeast quarter of section four, township ninety north, range forty-six west of the fourth p. m., in Plymouth county, in the state of Iowa, at which point a crossing is marked and shown on the plat hereto attached and made a part hereof, subject always to the observance and performance by the party of the second part of all and singular the following conditions, covenants, and agreements to be by it observed, kept, and performed. * * * (5) It is a further condition of the aforesaid grant, and the party of the second part also agrees, that if at any time the laws of the state of Iowa shall not require the trains and engines of railroad companies crossing each other at grade to stop at such crossing, in case the same shall be protected by a system of interlocking and automatic signals, or by other works, fixtures, and machinery, for the purpose of rendering it safe for engines and trains to pass over such crossing without stopping, then and in every such case it, the party of the second part, shall and will, when and as required so to do by the party of the first part, but at its own cost and expense, and subject to the approval of the party of the first part and the proper officers of the state of Iowa, furnish, erect, and at all times thereafter maintain and operate, at the crossing hereinabove granted to it, all the works, fixtures, and machinery necessary and requisite for the purposes aforesaid."

This contract was duly signed and executed by the parties thereto, but was not recorded in the recorder's office of Plymouth county.

It further appears that on the 3d day of December, 1889, in pursuance of the right granted it by the contract just recited, the Sioux City & Northern Company constructed its track across the right of way and track of the Dubuque & Sioux City Company at the point named, and completed the laying of its track into Sioux City about January 14, 1890. It also appears that a trust deed, in the nature of a mortgage, was executed by the Sioux City & Northern Company to the Manhattan Trust Company, as trustee, covering the right of way, track, rolling stock, and other property of the company, and being given to secure the coupon bonds issued by the company under the terms of the trust deed; the deed bearing date of January 1, 1890, but which was not signed and acknowledged by the grantor until January 28, 1890. It further appears that on the 5th of October, 1893, Warwick Hough and Samuel J. Beals were appointed by the court receivers of the Sioux City & Northern Railroad Company by an order granted in the present case, and have been since that date, and are now, in possession of the railway line and its appurtenances. It further appears that in December, 1889, and for years previous thereto, the statutes of Iowa required all trains upon lines of railway in the state which intersected or covered other railway lines upon the same level to be brought to a full stop at a distance of not less than 200 nor more than 800 feet from the crossing. McClain's Code Iowa, § 2005. But under date of March 19, 1894, the general assembly of the state passed an act, the first section of which is as follows:

"That when, and in case two or more railroads crossing each other at a common grade, or any railroad crossing a stream by swing or draw bridge, shall equip such crossing or bridge with an interlocking switch system, or other suitable safety device, rendering it safe for engines or trains to pass over such

crossings or bridge without stopping, and if such interlocking switch system, or other safety devices, shall be approved by the railroad commissioners, then and in that case, it is hereby made lawful for the engines and trains of such railroad or railroads to pass over such crossings or bridge without stopping, any law or the provisions of any law now in force to the contrary notwithstanding; and all such other provisions of law contrary thereto are hereby declared not to be applicable in such case."

The Dubuque & Sioux City Company and the Illinois Central Railroad Company. which is now operating the line of railway from Dubuque to Sioux City, and which is intersected by the line of the Sioux City & Northern Company, having obtained leave to intervene in this case, have filed a bill in which they seek, in effect, a decree of specific performance of the contract requiring the construction of an interlocking system at Hinton Crossing; claiming that, as the general assembly of the state of Iowa has now provided that when such a system is put in at a crossing the provisions of the statute requiring all trains to stop before reaching the crossing are no longer applicable, the interveners are entitled to demand the putting in of such a system, under the terms of the fifth condition found in the contract of December 2, 1889. In support of this bill, in addition to the facts already recited, evidence has been introduced showing that the crossing at Hinton is used by the Illinois Central Railroad Company as lessee of the line owned by the Dubuque & Sioux City, by the Chicago, St. Paul, Minneapolis & Omaha Railway, and by the Sioux City & Northern, operated by the receivers of this court, and that the number of trains passing over the crossing daily is from 22 to 26, varying somewhat with the season of the year, of which number from 4 to 6 are trains of the Sioux City & Northern Company. It is also shown in the evidence that the estimated cost of stopping average trains at crossings is from 70 to 80 cents for freight trains, and somewhat less for passenger trains. The interveners have also filed with the petition a sketch or plan showing the character of the interlocking system which they desire to have put in at the crossing in question, and have introduced evidence showing that the estimated cost thereof would be about $4,400, and that to maintain and operate the same would cost about $100 per month. It may be further stated that in the act of the general assembly of the state of Iowa of March 19, 1894, in addition to the section already quoted therefrom, it is further enacted that any company, whose line intersects at a common grade with that of another, may apply by petition to the district court of the county wherein such crossing is located for an order directing the putting in of such a device; and the act provides for the mode of hearing upon such petition, and, in case the order is granted, provides for a proper apportionment of the costs of putting in and operating the system. In the present case, however, the interveners do not base the application upon these remedial sections of the statute, but rely upon the contract of December 2, 1889, as the basis of the right asserted. From the facts developed in the evidence and in the record of this case, it is apparent that the real contest is between the interveners and the trust company, as the representative of the mortgage bondholders. The record embraces a bill brought by the trust company

for the purpose of foreclosing the trust deed upon the property of the Sioux City & Northern Railroad Company, and it is clear that sooner or later a decree of foreclosure will be entered for the sale of the property. There is no reasonable foundation for assuming that the property will again pass under the control or into the possession of the Sioux City & Northern Company. The court, through the receivers, is now holding the property for the benefit of the creditors of the company; and, under the facts appearing of record, it is manifest that the creditors are the real parties in interest touching all matters affecting the mortgaged property, although as yet the title of the railway company therein has not been cut off by a decree and sale. In the prayer in the intervening petition it is asked that the receivers of this court be directed to put in the locking system and device; and it is clear, beyond question, that, if the prayer be granted, the cost of putting in the system must come out of the funds in which the bondholders are directly interested. Not only so, but, if the court should grant the relief sought by the interveners, it would entail upon the bondholders the duty of maintaining the locking system in the future; and therefore it is that the question must be viewed as one wherein the bondholders, represented by the trust company, are the parties interested adversely to the interveners. The question, therefore, is whether a court of equity is justified in enforcing against the trustee as the representative of the bondholders—the latter being equitably the real owners of the mortgaged property—the contract with regard to the putting in and maintaining a locking system at Hinton Crossing, when it is apparent that the cost thereof must fall upon the bondholders. There is nothing appearing in the record which shows that the trustee or the bondholders, when the mortgage was executed and delivered, had any knowledge of the contract in question, and it is difficult to see upon what theory the contract can be enforced against them. If the claim is that the conditions in the contract are covenants running with the land, or affecting it as realty, then, to charge the trustee with knowledge, the contract should have been recorded; for the statute of Iowa expressly declares that no instrument affecting real estate is of any validity against subsequent purchasers for value without notice, unless the same is duly recorded in the county wherein the land lies, and it is settled that a mortgagee is a subsequent purchaser, within the meaning of the statute. Seevers v. Delashmutt, 11 Iowa, 174; Hewitt v. Rankin, 41 Iowa, 35. If the contention is that the agreement to put in an interlocking system must be deemed to constitute part of the consideration which the Sioux City & Northern Company paid for the right to cross and use the right of way belonging to the Dubuque & Sioux City Company, and that the latter can enforce a vendor's lien therefor, then the difficulty is that section 1940 of the Code of Iowa enacts that:

"No vendor's lien for unpaid purchase money, shall be recognized or enforced in any court of equity after a conveyance by the vendor, unless such lien is reserved by conveyance, mortgage or other instrument duly acknowledged and recorded."

In the case at bar the vendee is the Sioux City & Northern Company, and after the lien and right in favor of the Dubuque & Sioux City Company had been created by the agreement of December 2, 1889, and after the vendee therein had entered into possession of the rights created by that contract, the deed of trust, which is a conveyance and mortgage, within the meaning of the statute, was executed to the trustee, which defeats the right to enforce a lien for the purchase price, assuming that the agreement to put in an interlocking system can be deemed in equity to be part of the purchase price of the right and interest conveyed to the Sioux City & Northern Company. It must therefore be held, under the facts of this case, that when the trust deed was executed to the trustee the title and interest conveyed thereby passed to the trustee free from any lien, charge, or equity created by the conditions contained in the written contract of December 2, 1889; it appearing in the evidence that when the trust deed was executed and delivered to the trustee, in January, 1890, the named contract had not been recorded as required by the statute of Iowa, and the trust company had no actual notice of the existence of the contract, nor of any facts putting it on inquiry with regard to any right or equity existing in favor of the Dubuque & Sioux City or Illinois Central Company. All that can be claimed on behalf of the interveners is that the Sioux City & Northern Company is bound by the conditions of the contract to put in an interlocking system at Hinton Crossing, but there is no ground upon which it can be held that the conditions of this contract are binding upon the mortgage bondholders represented by the trust company. Are there any equitable grounds upon which a specific performance of the contract can be rightfully decreed in the case, it being apparent to the court that the burden thereof must fall upon the mortgage bondholders, who are, in equity, in case of an insolvent railway company, deemed to be the real owners of the mortgaged property? If it be urged that the putting in and maintenance of an interlocking system at Hinton Crossing would result in a saving of time and money to the companies running trains over the lines of railway intersecting at that point, it can be replied that under the statute of Iowa now in force, and adopted March 19, 1894, a proceeding in equity can be brought, wherein it can be ascertained whether need exists for putting in such a system, and, if ordered, the cost of putting in and maintaining the same can be properly and equitably apportioned among the several railway companies using the crossing. It is apparent that the interveners are seeking to compel the putting in and maintenance of the interlocking system at Hinton under the contract of December 2, 1889, rather than under the terms of the Iowa statute, for the reason that, if the contract can be enforced, the cost of putting in the system and maintaining it in the future can be placed upon those who are now or may become the owners of the Sioux City & Northern Line of railway, whereas, if the application be made under the statute, then the cost of putting in and maintaining the system can be equitably apportioned; and thus it is made to appear that, in effect, the purpose of

the present intervening bill is to cast the burden of putting in and maintaining the system in the future upon the mortgage bondholders of the Sioux City & Northern Company. To place the burden of paying the entire cost of putting in and maintaining the interlocking system upon the mortgagees, it must be held that they are bound by the terms and conditions of the written contract between the railway companies, and, as already pointed out, there seems to be no foundation for so holding. It is urged with much confidence, on part of the interveners, that the right of the Sioux City & Northern Company and its assigns to contruct and operate its line across the right of way of the Dubuque & Sioux City Company is derived from the grant made in the contract of December 2, 1889, and that all parties who rely upon this grant, and enjoy its benefits, must be held bound by all the conditions which formed part of the consideration moving the Dubuque & Sioux City Company to grant the right of crossing to the Sioux City & Northern Company. If it were true that the right to cross the line of the Dubuque & Sioux City Company depended solely upon the grant and contract in question, then there would be much force in the argument, but such is not the fact. Section 1933, McClain's Code Iowa, was in force in 1889, and it declared that "any such corporation may construct and carry its railway across, over or under any railway, canal, or water course." When, therefore, the Sioux City & Northern Company constructed its line, in 1889, across that of the Dubuque & Sioux City, it had the right so to do without obtaining any grant from the latter company; and the receivers now operating the road, and any new company which may succeed to the ownership of the property under a foreclosure sale, as the representative of the present bondholders, have now, and will continue to have, the right to use the crossing under the authority given in the statute, and the court cannot impose, as a condition to such continued use, the burden of paying the entire cost of putting in and operating an interlocking system. For these reasons it must be held that the court is not justified in granting a decree compelling the receiver to carry out and perform the conditions of the contract of December 2, 1889, it not appearing that the conditions thereof are binding upon the trust company as the representatives of the mortgage bondholders; it being open to the interveners, in case the facts are such as to justify and require the putting in and operating an interlocking system at Hinton crossing, to make application therefor under the provisions of the act of the general assembly of the state of Iowa adopted March 19, 1894.