T. O. KINMAN v. JOHN W. BOTTS and MARY BOTTS, Appellants.

**Specific performance:** EVIDENCE. To support a decree of specific performance of an alleged contract to convey land, the evidence of a binding contract must be clear and satisfactory. In the instant case the evidence is reviewed and held insufficient to establish an enforceable contract.

*Appeal from Davis District Court.*—HON. M. A. ROBERTS, Judge.

TUESDAY, FEBRUARY 15, 1910.

REHEARING DENIED SATURDAY, MAY 14, 1910.

ACTION for specific performance of an alleged contract to convey land. There was a decree for the plaintiff, and defendants appeal.—*Reversed.*

*T. P. Bence* and *John F. Scarborough,* for appellants.

*Taylor & Ramseyer,* for appellee.

McCLAIN, J.—There is no evidence that possession of the land to which this action relates was ever delivered to plaintiff, or that any payment of purchase price was ever made, and it was necessary, therefore, that the contract be established as a contract in writing. There were preliminary negotiations between John W. Botts, who was the sole vendor, and will be referred to hereafter as defendant, and one Leach, a real estate agent, during which Leach sought to secure from defendant a price on

defendant's farm situated in this state, such as would enable Leach to effect a sale thereof to an undisclosed prospective purchaser. Defendant was a resident of Colorado when these negotiations were commenced, and remained a resident throughout the negotiations, although he expressed an intention to return to Iowa before the sale, if one should be made, was finally consummated. As will hereafter appear, there is great uncertainty under the evidence of Leach himself testifying as a witness whether he was acting as agent of defendant or of plaintiff or of both parties, but it is plain that neither plaintiff nor defendant understood that Leach was authorized to act as agent for both of them. The correspondence between Leach and defendant was solely as to the price which defendant would take for his farm, and no terms of sale other than as to the price were specifically referred to, although Leach advised defendant that the farm had depreciated during his absence from it in that the improvements had been allowed to become in bad condition; this suggestion being made by Leach as a reason why the farm was worth less than defendant supposed it to be worth in view of his previous knowledge of its condition. Leach had indicated that the prospective purchaser would pay $9,600, and defendant had at first fixed his price as $10,000. There had been some suggestion from defendant that he would split the difference and pay $50 commission and furnish an abstract. Thereupon Leach telegraphed defendant: "Will you accept ninety-six fifty net? No commission or abstract. Wire our expense." With reference to the use of the word "our" in this telegram, it is proper to state as bearing upon its interpretation that Leach had a partner in the real estate business, and that he seems to have spoken of himself and partner jointly in the transaction, so that the expression "our expense" in the telegram does not necessarily refer to the expense of himself and the proposed purchaser. To this telegram

defendant responded by wire: "Yes. Will accept as per your wire date." Now, the sole question to be determined in this case is whether these telegrams concluded a binding contract of sale in view of the circumstances so far as they were known to both parties, between plaintiff, the undisclosed prospective purchaser, and defendant.

It is a matter of common knowledge that executory contracts for the sale of real property usually contain terms as to the time of payment of the consideration in a lump sum or by installments, the time of surrender of possession, the payment of the expense of furnishing an abstract, and similar matters. While it is true that an unequivocal present agreement of sale of specific property for a definite price would be valid without statement as to other conditions, all of which would in such event be determined by recognized rules of law, nevertheless we think the universally known usage to state such terms in a written contract may be taken into account where the language of the writings relied upon to constitute a contract leaves room for doubt as to whether the parties intended and understood that such writings should constitute a complete and binding contract of sale. Conceding for the present that Leach was acting as agent for an undisclosed principal and not as defendant's agent, it is still a matter of doubt in our minds whether the telegrams above set out amounted to more than an inquiry whether it would be worth while for the prospective purchaser to propose a definite contract of sale on the basis of a consideration of $9,650, and whether defendant did more than to express his willingness to enter into negotiations on that basis. It is to be noticed that defendant did not say simply, "Yes," or "Proposition accepted," but used the words "Will accept," which at least suggest an understanding on his part that a contract with that consideration stated in it would in that respect be satisfactory. The conduct of plaintiff on the receipt of de-

fendant's telegram by Leach strongly corroborates this view, for plaintiff immediately authorized the drawing of a formal written contract of sale containing such provisions as are usually put in such contracts, affixed his own signature thereto, and directed such contract to be forwarded by registered mail to the defendant with a slip of paper attached bearing the words "Sign and return." Accompanying this deed was a letter from Leach to defendant explaining that plaintiff was to pay in fact $9,800, of which amount $150 was to be retained by Leach as his commission, and an order on the bank for the payment of that amount out of the entire purchase price to Leach and his partner was inclosed for defendant's signature with a slip of paper attached asking that it also be signed and returned. It is no more than fair to plaintiff's counsel to say in this connection that plaintiff in his testimony does not admit that he directed Leach and his partner to make out this contract and forward it, and he seems to deny the affixing of his signature. But, if Leach was plaintiff's agent, then the acts of Leach and his partner were the acts of plaintiff, and are to be taken into account in determining the intention with which the telegrams were exchanged to the same effect as though they were the acts and conduct of plaintiff himself. If Leach was defendant's agent, then no binding contract was made by the exchange of telegrams, and no other written contract is relied upon. If Leach was attempting to act as agent for both parties, it was without the knowledge of either, and neither party would be bound.

On receipt of the contract in duplicate, defendant at once refused to execute it, not only on the ground that Leach had deceived him into believing that the price named was the highest price that could be secured from the prospective purchaser, and that Leach was attempting to get a commission of $150 without defendant's being consulted in that matter, but also on other grounds relating to the

terms of the sale as to insurance and time of payment. We think it extremely doubtful to say the least whether it was understood on either side that the telegrams concluded a binding and final contract of sale. In an equitable action for specific performance relief should not be granted unless a case is made out by clear and satisfactory evidence, and we reach the conclusion that the evidence in this respect was so far from satisfactory that plaintiff's petition should be dismissed.

A motion submitted with the case to strike parts of appellee's reply is overruled.

The decree is reversed, and the case is remanded to the lower court for a decree dismissing plaintiff's petition; or, at defendant's election, he may have such a decree in this court.—*Reversed.*