WESTERN SECURITIES COMPANY, Appellant, v. WILLIAM H. ATLEE et al., Appellees.

**APPEAL AND ERROR:** Demurrer Sustained—Appeal—Exception
1  Necessary—Failure to Amend—Judgment—When Exception Necessary. An appeal from an order sustaining demurrer need only show exception to such order. No exception need be entered to the formal judgment entry following failure to amend. (Sec. 3749, Code.)

**PARTNERSHIP:** Specific Performance—Real Estate. Real estate is
2  none the less real estate, in an action to enforce the specific performance thereof under a proper contract, because it belongs to a partnership, even though for many partnership purposes it may be treated as personalty.

**SPECIFIC PERFORMANCE:** Fundamentals Underlying Right to.
3  One having a contract for the purchase of real estate (a) cer-

tain, (b) fair and (c) equitable is as much entitled to specific performance of the contract as he has right to an action for damages.

SPECIFIC PERFORMANCE: Tender—Useless Acts. One seeking specific performance and who has been always ready, able and willing to perform, and demanded performance and was met with a refusal to perform on the part of his adversary need not tender the purchase price *prior to commencing action.* It is sufficient if he makes a good tender in court when he begins his action, time not being the essence of the contract, and the terms of the contract being strictly mutual.

SPECIFIC PERFORMANCE: Certainty as to Subject-Matter. Specific performance demands a contract (a) certain, (b) unambiguous and (c) free from reasonable doubt as to the subject matter, time, etc. Evidence reviewed in the instant case and held to meet the rule.

CONTRACTS: Certainty—"That Which Can be Made Certain." That is sufficiently certain which can be made certain.

PRINCIPLE APPLIED: A contract for the sale of "our electric light and power plant" is sufficiently certain.

CONTRACTS: Performance—No Time Fixed—Reasonable Time— Specific Performance. No time being fixed for performance of a contract, and time not being the essence of the contract, the law supplies a reasonable time.

PARTNERSHIP: Survivor—Power of—Sale for Other Property— Validity. A surviving partner has no right, in the absence of express authority, to sell the property of a partnership except for purposes connected with or in aid of winding up the affairs of the partnership and then only for cash.

PRINCIPLE APPLIED: A partnership firm owned an electric light and power plant, consisting of personal and real property. One partner died. The survivor in the name of the partnership contracted to sell the entire plant and to take in exchange therefor certain corporate stock. *Held,* the contract was unenforceable.

*Appeal from Lee District Court.*—HON. W. S. HAMILTON, Judge.

TUESDAY, FEBRUARY 9, 1915.

ACTION in equity for the specific performance of a contract to convey an electric light plant in the city of Ft. Madison, Iowa. The trial court sustained a demurrer to the petition, and plaintiff appeals.—*Affirmed.*

*Seerley & Clark,* for appellant.

*Blake & Wilson,* and *George B. Stewart,* for appellees.

DEEMER, C. J.—According to the allegations of the petition, which for the purposes of this appeal must be deemed true, plaintiff and appellant is a corporation doing business under the name given in the title of the case, and prior to June 3, 1912, Samuel Atlee and J. C. Atlee were engaged in business in the city of Ft. Madison, Iowa, under the firm name of S. & J. C. Atlee. As a part of its business it owned and conducted an electric light plant in said city, and owned the real estate upon which the main plant was conducted, with all the machinery and the wires and poles leading therefrom. J. C. Atlee died long prior to the year 1912, but Samuel Atlee continued the business under the firm name as a surviving partner, down until the time of his death, which occurred after the transactions to which we shall refer took place.

The defendants are the administrators of the Samuel Atlee estate; the heirs at law of J. C. Atlee, deceased; one Trawick, who, plaintiff alleges, claims some interest in the property in virtue of a contract with S. Atlee during his lifetime; and the Ft. Madison Electric Company, which, as is alleged, claims some interest in the property through Trawick, or Stone & Webster, for whom Trawick was acting. As to the two last named parties, Trawick and the Ft. Madison Electric Company, plaintiff alleged that their rights and the rights of each of them are subject and inferior to plaintiff's claim under the contract and arrangement which we shall

presently set out, and that they acquired their interests, whatever they may be, with full and express notice and knowledge of plaintiff's claim under its contract. It also avers that none of these third parties have any other claim than under a contract with S. Atlee personally, and not with the firm of which he was a member.

It is conceded that plaintiff originally had an option for the purchase of the electric light plant, signed by Samuel Atlee in the name of S. & J. C. Atlee, and it is averred that this was converted into a contract for the sale or exchange of the electric light plant. Plaintiff relies upon certain letters or written propositions and acceptances, and its whole case rests upon these writings and not upon any oral testimony.

To understand the case, it is necessary to set these out in the order in which they were written, and we here copy them in full. The original option read as follows:

"Ft. Madison, Iowa, June 3, 1912.

"For the consideration of One Dollar ($1.00) in hand paid, we hereby give the Western Securities Company a Sixty (60) day option on our electric light and power plant for a consideration of $125,000.00 in cash; 40 per cent to be paid in 30 days after acceptance, 40 per cent in 90 days and 20 per cent in four months.          (Signed) S. & J. C. Atlee."

This was afterward modified as follows:

"We hereby extend the above option 30 days from expiration. Accepted. Western Securities Co. By C. H. Walsh.
                                        June 30, 1912.

"Above in case deal can be carried by said Western Securities Company, final answer to be given within above limited time. Western Securities Company, By C. H. Walsh.

"If trust agreements and other papers satisfactory, we will accept for the above properties Par preferred stock and

to wit $125,000.00 and 31,500 common stock. S. & J. C. Atlee.
August 27, 1912.

"Extended Fifteen (15) days from August 27, 1912.
"Extended Five (5) Days from September 10, 1912.
"S. Atlee."

It is claimed that this option was merged into a contract
by the following instrument, signed by both parties.

"September 13, 1912. Option this day accepted and pre-
ferred and common stock of American Power & Light Com-
pany to be issued in accordance with price named.

"Western Securities Company,
"By C. W. Walsh.
"S. & J. C. Atlee."

Which was followed by a letter, which we here reproduce:

"Boston, Mass., Oct. 8, 1912.
"Messrs. S. & J. C. Atlee,
"Fort Madison, Iowa.
"Gentlemen:

"As per acceptance of the option given by you for the
sale of your electric light plant in Fort Madison, as I tele-
phoned you, we are ready to close up the deal for your
property and would ask you to hasten the surveys and abstract
and title papers so as to deliver same as soon as possible.
Also give Billsby & Company, Engineers, of Chicago, freedom
to examine the property. I will be in Fort Madison when I
return west.

"Respectfully,
"Western Securities Company,
"By C. H. Walsh."

It is alleged in the petition that:

"At the time of the making of the said acceptance, and
at all times since, the plaintiff has been ready, willing and
able to comply with the terms thereof, and it hereby tenders
into court the amount of stock as provided for in the said

agreement as made with the said S. & J. C. Atlee, heretofore
herein referred to.  .  .  .    That although it has been at all
times ready, willing and able to carry out its agreement as
aforesaid, and has demanded a specific performance of its
contract by the administrators of the estate of Samuel Atlee
and the heirs of the said J. C. Atlee, all of whom are made
defendants herein, the said defendants, and each of them,
refuse to carry out the said agreement and have undertaken
to make sales to other parties, regardless of said contract, and
they neglect and refuse to carry out the said contract with
the plaintiff, or comply with the terms thereof.''

Plaintiff also averred:

''That on November 29, 1912, after the acceptance of the
contract and after the said S. & J. C. Atlee were asked to
furnish abstracts, they made a contract with Stone & Webster,
a copy of which is hereto attached, marked Exhibit 'D,' and
made a part hereof, but the contract was then signed by
only Samuel Atlee, who has since died.''

The contract therein referred to was in this language:

''Stone & Webster.
''Boston, November 29, 1912.
''Samuel Atlee, Esq.,
''Fort Madison, Iowa.
''Dear Sir:—
''We will pay you Fifty-five Thousand Dollars ($55,-
000.00) cash for the entire property employed by you in the
electric light and power business at Fort Madison, subject
to the following terms and conditions:

''1. This offer includes all real and personal property
(except accounts receivable and cash on hand), easements,
franchise and rights owned, used or occupied in the genera-
tion and distribution of electric energy, for light and power,
which are to be conveyed free and clear of all incumbrances,
indebtedness and liability, actual or contingent.   It is under-

stood that the real estate on Johnson Street, on which the power house is located, is about 225 by 200 feet, and that you will grant an easement over your other property to enable us to draw water from the Mississippi River, and will also convey the right to lay a spur track from the power house to the C. B. & Q. track in the rear, in such manner as may be necessary to reach the same. Both easements to terminate if and when the property conveyed shall cease to be used for the location of a plant for generation or distribution of electric energy.

"2. You are to take care of all liabilities, actual or contingent, existing in connection with the business at the date of completion of sale.

"3. The offer is conditional on our obtaining a new franchise satisfactory to us for the term of twenty-five (25) years, for the use of the public streets.

"4. The offer is conditional upon our receiving a satisfactory report from our attorneys on the title to the property and franchises above described; and is also subject to our accounting examination, the results of which are to be satisfactory to us.

"5. The financial, legal and physical status of the property shall not be materially different at the time of purchase from that existing at the time of the accounting and legal examination, and it is understood that no service contracts will be made during this period without our approval.

"6. On receiving your acceptance of this offer, we will proceed to make the legal and accounting examination, and as soon as we receive satisfactory reports, will apply for a new franchise, and as soon as the same is granted will make payment and take over the property, the same to be conveyed as of the first of some month.    Very truly yours,

"(Signed)  Stone & Webster.

"I accept the above offer, and as I am to be absent, designate G. B. Stewart to act as my representative in my absence and receive payment.  (Signed)  Samuel Atlee."

The demurrer to this petition was the general equitable one, and to arrive at the real grounds relied upon we are compelled to go to briefs of counsel for appellees.

It is argued that as plaintiff did not except to the judgment which was rendered for want of amendment to its petition after the demurrer was sustained, there is nothing to appeal from, although plaintiff did in fact except to the ruling on the demurrer. Our Code provides that an appeal may be taken directly from a ruling on a demurrer. See Code Sec. 4101, Par. 3. Of course, an exception must be taken to the ruling, and that was done in this case. When a demurrer to a petition is sustained, and plaintiff excepts and does not amend his pleadings, he may appeal directly from the ruling, and if judgment be entered against him because he does not plead over, the effect is that he stands upon the ruling on the demurrer and there is no reason for his excepting to the final judgment, or for a motion to set aside the judgment. *Haefer v. Mullison,* 90 Iowa 372; *Jordon v. Kavanaugh,* 63 Iowa 152. See also *Tracy v. Mt. Pleasant,* 165 Iowa 435.

1. APPEAL AND ERROR: demurrer sustained: appeal: exception necessary: failure to amend: judgment: when exception necessary.

However, the record in this case shows that exceptions do appear in the journal entry to the entry of the judgment, four days after the judgment was ordered, dismissing the petition; and that these appeared in the entry of the judgment. There is no merit in appellees' suggestion that no appeal will lie. There is no showing that the appeal was from the judgment only.

II. It is said that the property which is the subject of the controversy is personalty only, and that specific performance will not lie to enforce a contract for the sale or exchange thereof. The allegations of the petition distinctly negative that fact. Therein it is recited that:

2. PARTNERSHIP: specific performance: real estate.

"The said S. & J. C. Atlee were the owners of a tract of

land in the said city of Fort Madison, Iowa, described as follows: Beginning at a point on the east line of Maple Street where the north line of Johnson Street produced across the said Maple Street would intersect the east line of the said Maple street; thence south 54.7 feet; thence east at right angles with the east line of Maple street, a distance of 208 feet; thence north parallel to the east line of Maple street 208 feet; thence west at right angles with the last above line, a distance of 208 feet, intersecting the east line of Maple street 153.3 feet north of the place of beginning; thence south a distance of 153.3 feet to the place of beginning, containing one acre, and that the electric light plant, with wires, etc., upon said real estate was the property of said firm, and was managed by the said Samuel Atlee after the death of the said J. C. Atlee, under the firm name of S. & J. C. Atlee.''

It is true, of course, that for many purposes real estate owned by a partnership is treated as personalty; and that the title held by a partnership is *sui generis*. It partakes of the nature of a tenancy in common, and also of a joint tenancy, but in reality it is neither. The legal title is held in trust for the firm or the firm creditors, but the property itself is realty and a legal contract for the sale thereof may be enforced against proper parties. *Pomeroy's Equity Jurisprudence,* Vol. 3, 2d Ed., Secs. 1401, 1402, 1403.

Even as to personalty, if it partakes of the nature of real estate, specific performance may be enforced. See cases cited in 36 Cyc., page 554.

III. Of course, specific performance is not a remedy of absolute right, and it will not be granted when it would be inequitable to do so. But no reason appears for not enforcing the contract if it be of sufficient certainty;

3. SPECIFIC PER-
FORMANCE:
fundamentals
underlying
right to.

and there is nothing to show that it was not fair and equitable. The case stands on plaintiff's petition alone, and many of the matters relied upon by defendants are not in the case.

There is nothing to indicate inadequacy of consideration,

or any inequality in the deal. In the absence of some such showing, the other necessary things being shown, one having a contract for the purchase of real estate is as much entitled to specific performance of the contract as an action at law to recover damages for breach of contract. In other words, while the court has some discretion in the matter, this discretion is not absolute but a sound legal discretion, bottomed on the facts of each particular case. *New York Brokerage Co. v. Wharton,* 143 Iowa 61; *Hennessy v. Woolworth,* 128 U. S. 438, 9 Sup. Ct. R. 109.

IV. Appellees' contention that an executory contract will not be specifically enforced is, of course, unsound, as an executed contract needs no enforcement. And there is noth-

4. SPECIFIC PER- ing in the proposition that plaintiff cannot
FORMANCE:
tender: use- recover because it did not tender the stock
less acts. called for in the contract before commencing the suit. According to the allegations of the petition, plaintiff was able, ready and willing to perform and demanded of defendants that they perform their part of the contract, which they refused to do, and it "tendered into court the stock called for by the contract." This was a sufficient tender, and in equity is regarded as the equivalent of a formal tender before suit brought. Defendants' refusal to perform upon demand sufficiently excused the plaintiff in not tendering the stock before suit was brought. Time was not made the essence of the contract, and the conditions of the contract were mutual and plaintiff was not required to deliver the stock save upon a transfer to it of the property.

V. One of the main points in the case, as we understand it, is, Was there a sufficiently definite, clear and certain contract between the parties to justify a court of equity in

5. SPECIFIC PER- decreeing a specific performance thereof?
FORMANCE:
certainty as to The general rule is that to support such a
subject-mat- decree the contract must be certain, unambig-
ter. uous and free from reasonable doubt. *Gould v. Gunn,* 161 Iowa 155; *Kinman v. Botts,* 147 Iowa 474;

*Foshier v. Fetzer,* 154 Iowa 147; *Ross v. Ross,* 148 Iowa 729; *Muench v. Barnall,* 163 Iowa 352.

Of course, a mere option will not be specifically enforced. But an option duly accepted may be enforced. *Miller v. Cameron,* 15 Atl. 842, 1 L. R. A. 554; *Kerr v. Day,* 14 Pa. St., 112, 53 Am. Dec. 526; *Schaeffer v. Herman,* 85 Atl. 94; *Sayward v. Houghton,* 51 Pac. 853; *Goodpaster v. Porter,* 11 Iowa 161; *O'Brien v. Boland,* 44 N. E. (Mass.) 602; *Reese Co. v. House,* 124 Pac. 442.

In *Goodpaster's* case, *supra,* this court said: "A contract includes a concurrence of intention in two parties, one of whom promises something to the other, who on his part accepts such promise. Hence consent or acceptance is indispensable to the validity of every contract; for as A cannot, by the mere act of his mind, transfer to B a right in property without a concurrent intention on his part to accept it, neither can A by his promise confer a right against himself until B has, by his acceptance of it, concurred in the intention of acquiring such right. But if A promises B to pay him a sum of money if he will do a particular act, and B does the act, the promise thereupon becomes binding, although B at the time of the promise does not engage to do the act. 'In the intermediate time,' says Wilde, J., in *Train v. Gold,* 5 Pick., 380, 'the obligation of the contract or promise is suspended; for until the performance of the conditions of the promise there is no consideration, and the promise is *nudum pactum;* but on the performance of the condition by the promisee, it is clothed with a valid consideration which relates back to the promise, and it then becomes obligatory.' While there can be no contract without the consent of all the parties to it, it is not necessary that their wills should concur at the same instant. *Moore v. Pierson* et al., 6 Iowa 278; and see *Attix Noyes & Co. v. Pelan & Anderson,* 5 Iowa 336.

"In the case before us there is an express undertaking on the part of defendants to pay $2,800 for the land at a fixed time, if plaintiff should then elect to sell it. He avers

that he did elect to sell, tendered the deed and demanded the contract price.    Plaintiff then performed the condition. Defendant's promise had not been revoked.  By the acceptance of the contract and the election to sell, the promise of defendants was clothed with a good consideration, which, in the language of the books, related back to the promise and became obligatory.   See *Cherry v. Smith*, 3 Humph. 19; *Mactier v. Frith*, 6 Wend. 103.''

An option is a mere offer to sell; but such offer, when accepted in a proper manner, constitutes a binding contract, enforceable by either party.  *Smith v. Bangham*, 104 Pac. 689, 28 L. R. A. (N. S.) 522; *Hopwood v. McCausland*, 120 Iowa 218.

Originally plaintiff had a mere option for the purchase of the property, but as this was founded upon a consideration, it could not be withdrawn by the other party until the expiration of the period for which it was granted or to which it was extended, and the fundamental questions in the case are, Was this option accepted?  And, Did the minds of the parties meet upon the terms and conditions of the contract?

The subject matter of the contract, that is, the electric light plant and property, is described with sufficient definiteness.  In the original option it is described as "our electric light and power plant."  This is a sufficient description.  *Koch v. Streuter*, 75 N. E. 1049, 2 L. R. A. (N. S.) 210; *Mull v. Smith*, 94 N. W. (Mich.) 183; *Koch v. Dunkel*, 90 Pa. St. 264.

6. CONTRACTS: certainty: "that which can be made certain."

Going now to the other terms and conditions, it will be noticed that the time was extended at least three times, and did not expire until September 15, 1912, and the acceptance relied upon was given on September 13, 1912. The consideration for the property was changed from $125,000.00 in cash, payable in installments, to $125,000.00 in preferred stock in the American Power & Light Co., and $31,500 in the

7. CONTRACTS: performance: no time fixed: reasonable time: specific performance.

common stock of the company, and the acceptance of the option was signed not only by plaintiff, but by S. & J. C. Atlee, and this acceptance specifically provided that the electric light plant and property should be exchanged for the corporate stock mentioned. There is no doubt, we think, that this stock was to be delivered when the transfer was made and not in installments, as if the purchase price had been in money under the original option. After this acceptance, which was agreed to by S. & J. C. Atlee on September 13, 1912, nothing remained to be done to complete the deal save the exchange of the stock for the property, and no time being fixed for performance, and time not being the essence of the contract, either party had a reasonable time in which to perform, and either could have enforced the contract.

Plaintiff's letter of October 8, 1912, was a confirmation of the acceptance and a demand for performance, with a request to the Atlees to hasten the surveys and abstract and title papers, so as to deliver the same as soon as possible. This request was refused by S. & J. C. Atlee, and on November 29th of the same year, Samuel Atlee negotiated a sale to Stone & Webster. The acceptance was, as we think, certain, specific and unconditional, and the only departure from the original offer was the substitution of stock for cash, and this was with the express consent of the vendors. In other words, these vendors were satisfied with the trust agreements and other papers referred to in the statement made under date of June 30, 1912.

From and after the acceptance under date of September 13, 1912, there was, as we think, a completed contract between the parties. Assuming that there was a completed contract, it is immaterial, under the issues as now presented, that in the letter of October 8th in which plaintiff demanded performance thereof, it asked for a survey, abstract and title papers, and asked that the engineers named be permitted to examine the property. If it asked more than it was entitled to demand, this did not, in itself, destroy the contract, although

it might have been sufficient ground for S. & J. C. Atlee's refusing compliance therewith, had they put their objection upon this ground. But there is nothing in the record showing or tending to show that this was stated by them as a ground for non-compliance with the demand. The record before us shows that without stating any grounds they refused to carry out their agreement, and that notwithstanding plaintiff's demand for the completion of the contract, the Atlees refused to comply with their agreement and sold the property to another. In this state of the record, it seems to us that plaintiff has made out a case upon paper, in so far as the matter now under consideration is concerned, and that the demurrer should not have been sustained on this ground.

VI. Appellees insist that as the title to the property stood in the name of the firm, and was partnership property, Samuel Atlee, the surviving partner, had no power to sell and dispose of the same—no power in any event to contract for an exchange of the property for corporate stock; that his only authority in any event was to sell for cash, to close up the partnership affairs, and pay its debts; that even then it should be shown that there were debts of the partnership to pay. This contention raises the most doubtful proposition in the case.

8. PARTNERSHIP: survivor: power of: sale for other property: validity.

As already indicated, the nature of the title to real estate held by a partnership, the deed running in the partnership name, is peculiar. In some respects it is like a tenancy in common, and in others it is like a joint tenancy, but in reality it is neither. The legal title stands in the individuals named as the partnership; in this case in Samuel Atlee and J. C. Atlee individually, but this legal title was held in trust for the firm of which they were members, and the firm was, in a sense, the beneficial owner thereof.

"The clear current of the American decisions supports the rule that, in the absence of any agreement, express or

implied, between the partners to the contrary partnership real estate retains its character as realty, with all the incidents of that species of property, between the partners themselves, and also between a surviving partner and the real and personal representatives of a deceased partner, except that each share is impressed with a trust implied by law in favor of the other partner, that, so far as is necessary, it shall be first applied to the adjustment of partnership obligations, and the payment of any balance found to be due from the one partner to the other on winding up the partnership affairs. To the extent necessary for these purposes, the character of the property is in equity deemed to be changed into personalty. On the death of either partner, where the title is vested in both, the share of the land standing in the name of the deceased partner descends as real estate to his heirs, subject to the equity of the surviving partner to have it appropriated to accomplish the trust to which it was primarily subjected. The working out of the mutual rights which grew out of the partnership relation does not seem to require that the character of the property should be changed until the occasion arises for a conversion, and then only to the extent required. The American rule commends itself for its simplicity. It makes the legal title subservient in equity to the original trust. It disturbs it no further than is necessary for this purpose. The portion of the land not required for partnership equities retains its character as realty, and it leaves the laws of inheritance and descent to their ordinary operation.'' *Darrow v. Calkins,* 49 N. E. (N. Y.) 61. See also *Paige v. Paige,* 71 Iowa 318, which announces the same doctrine.

As surviving partner, it may be assumed that Samuel Atlee held title to the real estate in trust for the creditors, the representatives of the deceased partner, and for himself, although the title was in himself and J. C. Atlee; but except as needed to pay debts or to secure a proper distribution of the property between himself and the representatives of his

deceased partner, he had no authority to sell the entire real estate. And even had he the power of sale, it does not follow that he had the right to exchange the same for other property, no matter if that property were of value; for the plain reason that this would not aid him in carrying out his trust and might prove very harmful to the beneficial owners. His only authority as surviving partner to sell the entire real estate was because of his trusteeship as surviving partner to handle the property for the benefit of the partnership, to enable it to wind up its affairs and distribute the proceeds. *Brown v. Watson,* 66 Mich. 223, 33 N. W. 493; *Shearer v. Shearer,* 98 Mass. 107.

At most, the surviving partner takes the real estate of the firm only so far as in equity it has the character of personalty, and this is so far and so far only as may be necessary for the payment of the partnership debts. *Strong v. Lord,* 107 Ill. 25.

And the survivor being a trustee, a court of equity may authorize him to make sale thereof. *Mauck v. Mauck,* 54 Ill. 281.

If without procuring an order of court he assumes to act on his own motion, it must be shown that he was justified in making the sale, in order to carry out his trust; and the sale should be such as will aid in the accomplishment of the purpose.

In *Van Aken v. Clark,* 82 Iowa 256, this court said: ''As already stated, the petition, fairly interpreted, shows that the firm of which Hill was a member had not been dissolved at the time of his death; its affairs had not been settled; its debts were unpaid, and its assets had not been distributed. The real estate, which is the chief subject of controversy, was procured with partnership assets for the use of the firm in the prosecution of its business. It was held and used for that purpose, and was in all respects treated as partnership stock. That such was the intention of the firm in procuring it is shown in part by the fact that the title thereto was taken in the firm name. It is the general rule, which has been fre-

quently approved by this court, that in equity real property owned by a partnership will be treated as personalty, subject to the rules which usually govern that species of property. *Paige v. Paige,* 71 Iowa 318; *Hewitt v. Rankin,* 41 Iowa 35; *Evans v. Hawley,* 35 Iowa 83; 1 Lindley, Part., star p. 331, and notes; Parsons, Prin. Part., Sec. 109, and notes; Parsons, Part. 371.

"But the death of Hill operated to dissolve the partnership. What effect did the dissolution have upon the title to the real estate? It was impressed with the character of personalty for the purposes of the partnership, and the appellants contend that it ceased to have that character when the partnership was dissolved. It was said in *Allen v. Withrow,* 110 U. S. 119, 3 Sup. Ct. Rep. 517, that 'real property owned by a partnership and purchased with partnership funds is, for the purpose of settling the debts of the partnership and distributing its effects, treated in equity as personal property.' In *Hoyt v. Hoyt,* 69 Iowa 174, it was said: 'Real estate which belongs to a partnership is subject to all the incidents of personal property. . . . None of the partners can be said to have any interest or right in it while the partnership continues. The claim of the partner is to such portion of the residue of the property as shall be found to be due him upon the final balance of the accounts of the firm after the conversion of the assets and the liquidation of the debts.' In *Walling v. Burgess,* 22 N. E. Rep. (Ind.) 419, the sale of partnership real estate by a surviving partner to pay debts of the firm was sustained. The ground of the decision seems to be that the realty of a partnership must be treated as personalty so long as it is required for the payment of partnership debts. That doctrine was approved in *Leaf's Appeal,* 105 Pa. St. 505. See also *Lang's Heirs v. Waring,* 69 Am. Dec. 533; *Huston v. Neil,* 41 Ind. 504. When a partnership is dissolved by the death of a member the survivor at once becomes invested with the exclusive right to the possession and control of the personal property of the firm. *Starr v. Case,* 59

Iowa 491; Parsons, Part. 440; 1 Lindley, Part., star p. 342, note 1. He has that right for the purpose of settling and closing the partnership business. It may be as important that he have possession of the real property of the firm also, and the right to use it for the same purpose; and we do not think that heirs of the deceased partner should be permitted to interfere with such possession and use where such interference would not be authorized in the case of personal property. In other words, the surviving partner is entitled to the possession of, and to control and use, both the real and personal property of the firm so long as it is required to settle and close its business; and until the business is closed the realty will be treated in equity as personal property. In this case, if the averments of the petition be true, the business of the Iowa City Bank was unsettled when Hill died, and it was unsettled when the proceedings in controversy were instituted and carried on. The defendants, as surviving partners, were entitled to the possession of the property in controversy. Application was made to the court having jurisdiction of such matters for such relief as would authorize the settlement of the estate of Hill, and to accomplish that end it was necessary to settle the partnership matters in which the estate was interested.''

But the right of the survivor is a qualified one, and as a rule he cannot assume any new obligations or dispose of the property save in execution of his trust. It seems to follow from these fundamental principles that a surviving partner cannot, without express authority, sell the real estate of his firm except to wind up the affairs of the partnership; and that by necessary implication he cannot exchange it for other property which could not be used for the liquidation of the firm indebtedness. Surely he should not be permitted to take corporate stock in a new venture and thus subject the representatives of the deceased partner to the hazards of such a business. This is not the usual or ordinary method of set-

tling up the affairs of a partnership, and we think it was unauthorized in this case.

.     An agent has no power to sell the property of his principal except for cash.  *Wilkin v. Voss,* 120 Iowa 500; *Ormsby v. Graham,* 123 Iowa 202.

And if this be the rule as to agents, it certainly should be applied to surviving partners, who have no authority to dispose of partnership property except for the purpose of closing up the business and paying the debts of the firm.  See in support of this view: *Milner v. Cooper,* 65 Iowa 190; *Van Staden v. Kline,* 64 Iowa 180; *Niemann v. Niemann,* 43 L. R. Ch. Div. 198; *Hewitt v. Rankin,* 41 Iowa 35; *Dunlap v. Limes* 49 Iowa 177.

We reach the conclusion that under the facts disclosed, Samuel Atlee had no authority to dispose of the property, as surviving partner, and no authority to take corporate stock in exchange therefor, even if he had power as a surviving partner to sell the real estate to close up the affairs of the partnership.  Plaintiff had notice that it was partnership property, and was bound to know the authority of Samuel Atlee.  On this ground the demurrer was properly sustained. —*Affirmed.*

Ladd, Evans and Preston, JJ., concur.