F. S. MONROE, Appellant, v. ELMA CRABTREE, Appellee.

**SPECIFIC PERFORMANCE:** Contracts Enforceable—"First Chance to Buy." Specific performance may not be decreed of a contract which simply provides that, if the owner of land "concludes to sell," he will give the other party to the contract the first right to buy, on stated terms.

**SPECIFIC PERFORMANCE:** Contracts Enforceable—Non-Mutual Contracts. Whether specific performance of a contract which simply provides that, if the owner of lands "concludes to sell," he will give the other party the first chance to buy on stated terms, should be refused on the ground of non-mutuality, *quaere.*

**CONTRACTS:** Breach—Land Contract—"First Chance to Buy." A contract wherein the owner of property agrees that, if he "concludes to sell," he will give the other party the first chance to buy, on stated terms, is only breached by an actual sale to a stranger to the contract.

*Appeal from Winneshiek District Court.*—A. N. HOBSON, Judge.

WEDNESDAY, NOVEMBER 22, 1916.

THIS is an action in equity for the specific performance of a contract to convey lands. Defendant's demurrer to the petition was sustained. Plaintiff appeals.—*Affirmed.*

*Burling & Burling,* for appellant.

*W. M. Allen* and *E. R. Acres,* for appellee.

PRESTON, J.—The petition alleges, substantially that, on April 11, 1910, defendant was the wife of one Arlow Crabtree, and said parties were the owners of the land in controversy; that on said date plaintiff purchased said real estate from defendant and her husband; that, at about said time, plaintiff paid part of the consideration, and warranty deed was executed by defendant and her husband in favor of plaintiff, which deed, together with the contract, was deposited in bank for safe keeping; that thereafter, owing to some difficulty between defendant and her husband, the Crabtrees requested that said sale be abandoned; and that, in order to induce plaintiff to change said contract, the Crabtrees entered into a written contract. This contract is as follows:

1. SPECIFIC PERFORMANCE: contracts enforceable: "first chance to buy."

"Castalia, Iowa, April 11th, 1910. This agreement, made and entered into this 11th of April, 1910, by and between Arlow Crabtree and Elma Crabtree, and F. S. Monroe, all of Winneshiek County, Iowa, that in case the said Arlow and Elma Crabtree shall conclude not to sell the land, as per deed made to the said F. S. Monroe on this 11th day of April, 1910, then the said parties reserve the right to declare the said deed null and void by paying back to the said F. S. Monroe the $600 this day paid on the purchase price of land described in said deed, with interest at the rate of 6% from date. Mortgage made to secure the above amount. It is understood that, should the said Arlow Crabtree and Elma Crabtree change their mind as to the sale of the land described in said deed referred to, that the said F. S. Monroe shall have

the first chance to purchase the said land at the sum of $2,808 at any time hereafter when they do conclude to sell the land described in the deed referred to.

> "Elma Crabtree.
> .          Arlow Crabtree.
> F. S. Monroe."

It is further alleged that, on March 1, 1911, the husband assigned, transferred and conveyed to plaintiff all his right, title and interest in and to the real estate.  The paper which plaintiff claims is such conveyance is as follows:

"Castalia, Iowa, March 1st, 1911.  Received from F. S. Monroe the sum of $154, in full payment of all my right, title and interest to and for the following described premises, to wit:  NE¼ of NE¼ (except 4 acres) of Sec. 9, Twp. 96, Range 7, as per deed now in possession of the Castalia Savings Bank, held under contract between Arlow Crabtree and Elma Crabtree and F. S. Monroe, and dated April 11th, 1910.
> "Arlow Crabtree."

It is alleged that, on said date, Arlow Crabtree was the husband of defendant, but that they have since been divorced; that the title to said land is at present of record in the name of the defendant, Elma Crabtree; that, after the execution of the contract of April 11th, defendant and her husband obtained from plaintiff permission to break up certain parts of said land, and also got plaintiff to furnish seed to re-seed other parts of the land, and that such seed was furnished by plaintiff about the last of April, 1910; that defendant Elma has changed her mind as to the sale of said lands, and that she has recently offered to sell the same to other parties; that, on July 13, 1915, plaintiff offered to pay defendant Elma the sum of $2,808, and demanded that she execute a deed to him for said real estate, but defendant refused to execute such deed, and refused to convey the premises to

plaintiff in accordance with the terms of said contract, stating that she was not bound by it; that plaintiff now holds a note against defendant, secured by mortgage dated March 21, 1911, for $2,200, past due, with interest at 5 per cent per annum, and that there is now due thereon $2,346; that plaintiff has offered to surrender said note and mortgage to defendant, together with a release of a mortgage, and to pay her in cash the difference between the amount due on the note, and $2,808, the amount of the consideration specified in the contract, and has demanded that defendant execute a deed in favor of plaintiff, conveying said premises according to the terms and conditions of the contract, or that she turn over to plaintiff for said consideration the deed that was deposited with the contract for safe keeping; that plaintiff has always been ready, willing and anxious to carry out his part of the contract, and is now ready and willing to perform, and to deposit in court the said note and mortgage, together with a release of the mortgage, and pay in cash the difference between the amount due on the note and $2,808, upon defendant's depositing in court for plaintiff the proper deed of conveyance. The warranty deed before referred to is not set out in the record. There is no claim that defendant has, in fact, conveyed the premises to any other person, or that she has entered into a binding contract to so convey.

The principal point argued is as to whether the contract by its terms was lacking in mutuality. Plaintiff contends, and cites authorities by which he claims, that the contract fixes the price, the time and terms of payment, and gives a definite description of the premises, and is, therefore, enforcible; and that, even though the contract be considered as a mere option, plaintiff would be entitled to a specific performance. On the other hand, it is contended by defendant that a contract, to be specifically enforced by the court, must be mutual; that is to say, such that it might, at the time it was entered into, have been enforced by either of the parties against the other, citing *Luse v. Deitz*, 46 Iowa 205, *New York Brokerage Co.*

*v. Wharton,* 143 Iowa 61, *Gossard v. Crosby,* 132 Iowa 155;
that the contract must be complete in all its parts and con-
tain all the material terms; and that none of these terms
must be left to be settled by future negotiation; that it must
also be certain, and each of the material terms must be
expressed with sufficient clearness and definiteness to enable
the court to ascertain the intent of the parties, and to frame
its decree in accordance with such intent; that the court can-
not make a contract for the parties, citing 36 Cyc. 587, *Wolf
v. Lodge,* 159 Iowa 162, *Kinman v. Botts,* 147 Iowa 474,
*Meyer Land Co. v. Pecor* (S. D.), 101 N. W. 39; and further,
that the time, terms and manner of payment, etc., are mate-
rial terms of an executory contract to sell real estate, citing
*Kinman v. Botts,* supra, *Meyer Land Co. v. Pecor,* supra;
and that a memorandum of an executory contract for the
sale of real estate cannot be specifically enforced by the court
(*Fisher v. Buchanan* [Nebr.], 96 N. W. 339).

The appellee's contention, more specifically stated, is
that, because the provision of the contract is only that, if
defendant Elma Crabtree shall at any time hereafter conclude
to sell said real estate, plaintiff shall have the first chance to
purchase the same at a certain price named in the alleged
contract, the plaintiff is under no obligation to purchase at
that price; and that, therefore, there is no mutuality of the
contract; and that, as defendant could not have had specific
performance against the plaintiff, plaintiff could not have
specific performance against the defendant, citing *Luse v.
Deitz,* supra. It is also thought by appellee that, as there is
no certainty as to the time of performance, for that reason
there is a lack of mutuality; and on this point they cite
*Olive v. Dougherty,* 3 G. Greene 371; *Fisher v. Buchanan,*
supra. Appellant lays stress upon the fact that, as he claims,
the then husband of defendant conveyed to plaintiff all his
interest in the land, by the paper dated March 1, 1911, here-
tofore set out. Appellee contends that this is not a transfer,
assignment or conveyance of any interest in the real estate,

but is simply a receipt from the then husband of defendant to plaintiff, and that it has nothing to do with the obligations of defendant Elma to plaintiff. However this may be, defendant did not sign that receipt, and is not a party to it. There is nothing in the record showing the provisions of the divorce decree between the defendant and her husband as to their property rights.

We deem it unnecessary to pass upon these different questions. It is enough to say that, to say the least of it, it is doubtful whether there is sufficient mutuality to entitle plaintiff to a specific performance. If this is so, there was no abuse of the legal discretion of the court in refusing a decree as prayed by plaintiff.

2. SPECIFIC PERFORMANCE: contracts enforceable: non-mutual contracts.

After all, as we look at it, whether plaintiff is entitled to a specific performance depends upon that part of the contract where it is alleged that defendant has offered to sell the property to others, and this is the part of the contract upon which plaintiff relies as entitling him to performance. It occurs to us that, even though defendant stated to another that she was willing to sell the property, still she would not be obliged to sell. Even after that, she could again change her mind and refuse to sell to such other person or anyone, unless there was an actual sale. As stated, there is no claim that there was any sale. As we construe the contract, there would be no liability on her part to plaintiff, even if the contract was otherwise enforcible, until there was a sale

3. CONTRACTS: breach: land contract: "first chance to buy."

of the property by her. Under such circumstances, there might then be a breach of the contract entitling plaintiff to damages. This last proposition, we do not, of course, now determine.

Our conclusion is that the trial court rightly sustained the demurrer, and the judgment is, therefore,—*Affirmed.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.