PHILIP MARTI, Appellant, v. PAUL LUDEKING et al., Appellees.

**SPECIFIC PERFORMANCE:** Indefinite and Incomplete Oral Contract.

1   An oral contract for the sale of real estate, followed by partial payment, will not be specifically enforced, unless it is so certain and definite in its terms as to leave *nothing* to conjecture and *nothing* to be supplied by the court. Performance refused in a case where the contract was silent (a) as to the title, (b) whether the conveyance should be by warranty or quitclaim deed, and (c) as to the time when possession would be given.

SPECIFIC PERFORMANCE: Lack of Mutuality.  An oral contract for
2  the sale of real estate will not be specifically enforced when the
contract requires the purchaser, *and a third party who is not a
party to the contract,* to sign a note and mortgage to the vendor,
even though said third party subsequently offers to execute said
note and mortgage.

*Appeal from Allamakee District Court.*—W. J. SPRINGER, Judge.

## DECEMBER 13, 1921.

## REHEARING DENIED MARCH 17, 1922.

ACTION in equity, to compel the specific performance of an
alleged oral agreement to convey real estate.  A trial resulted
in the dismissal of plaintiff's petition, and he appeals.—*Affirmed.*

*William S. Hart,* for appellant.

*E. R. Acres* and *Stilwill & Stilwill,* for appellees.

STEVENS, J.—The evidence shows without dispute that, on
or about May 16, 1919, Philip Marti, appellant, went with Wil-
liam Riley, a real estate agent, to the home of appellees, for the
purpose of inspecting an 80-acre farm on which
appellees resided, with a view of becoming a
purchaser therefor; that, after full inspection
and negotiations between the parties, appellant
agreed to purchase, and appellees agreed to sell the farm to
him for an agreed price of $215 per acre, $500 to be paid in
cash, $9,500 on March 1st, and the balance, of $7,200, in 7 years,
with interest at the rate of 5½ per cent, appellant and his wife
to execute a note to appellee for said amount, together with a
mortgage upon the farm to secure the payment thereof.

1. SPECIFIC PER-
FORMANCE: in-
definite and in-
complete oral
contract.

It was also agreed that appellees would leave all unused
straw on the premises and a line shaft and pulley in the milk
house.  Appellant, after the price and terms were agreed upon,
gave Ludeking a check for $100, and it was agreed between them
that they would meet at Waukon, as soon as Ludeking finished
planting corn, and that a written agreement would be prepared
and signed by the respective parties.  Anna Ludeking later re-

fused to enter into a written agreement or to execute a deed conveying the farm to appellant. This was the reason assigned by appellee for his failure and refusal to carry out the alleged oral contract, or to have same reduced to writing and signed. Appellees resided on the farm in controversy, and, before the case was tried in the court below, caused the homestead to be platted.

The general rules governing the specific performance of contracts to convey real estate are familiar and well settled. The defenses urged to the relief prayed are that the parties, at the time the oral negotiations and agreement were had, contemplated that same should become binding only when reduced to writing and signed by the parties; that the terms of the oral agreement are uncertain, indefinite, and incomplete, and that it is without mutuality. The particulars in which it is claimed that the oral agreement is incomplete are that nothing was said as to the kind of instrument by which title was to be conveyed,— that is, whether by quitclaim or warranty deed; that no provision was made as to title or the furnishing of an abstract; and that the time for the exchange of the papers and delivery of possession was not agreed upon.

The ground upon which counsel contends that the oral agreement was wanting in mutuality is that appellant's wife was not a party thereto, and could not be compelled to sign a note for $7,200, or a mortgage to secure the payment thereof. Contracts to be specifically enforced must be so certain and definite in their terms as to leave nothing to conjecture or to be supplied by the court; nor must they be lacking in mutuality. Pomeroy on Specific Performance (2d Ed.), Sections 145 to 174, inclusive; Fry on Specific Performance (5th Ed.), Sections 463 to 476; *Luse v. Deitz,* 46 Iowa 205; *Gossard Co. v. Crosby,* 132 Iowa 155; *Olson & Nessa v. Rogness,* 173 Iowa 331; *Monroe v. Crabtree,* 178 Iowa 546; *Dow v. McVey,* 174 Iowa 553.

As the premises in controversy in part constitute the homestead of appellees, the parties must have contemplated that the written instrument would be signed by both Paul and Anna Ludeking. Further, as the note and mortgage to be executed by appellant were also to be signed by his wife, the parties must also have contemplated that, when the agreement was reduced

to writing, it would be signed by her, as well as by her husband. In other words, the agreement, when reduced to writing, was to be complete in every detail, and such as to be capable of being specifically enforced by either party against the other. It was orally understood by the parties that $400 was to be paid when the written contract was signed, and $9,500 March 1st, when the note and mortgage were to be executed by appellant and his wife to Paul Ludeking. The agreement made no special provision as to the time when Ludeking should surrender possession of the premises. Before the court below could decree specific performance of the contract, it must find this fact from the contract. Without some provision therein fixing the time for consummation of the agreement by the delivery of possession, it was incomplete and indefinite in this respect. The oral agreement is silent on this point. Of course, the court might infer that possession was to be given March 1st, when the balance of $9,500 would be paid and a note for $7,200 and a mortgage upon the farm to secure the payment thereof would be executed. Such finding could not, however, be based upon the expressed terms of the oral agreement of the parties. It is a matter of common knowledge, in these days of high land values, that purchasers are particular to know that the seller has a good, merchantable title to the land which forms the subject of the contract, and that an abstract showing such fact will be furnished. Nothing was said by the parties upon the question of title, nor as to the form of instrument by which the land was to be conveyed: that is, whether by quitclaim or warranty deed. It is of some significance that appellant gave Ludeking a check for but $100, when the initial payment was to have been $500. This, of course, is not an unusual transaction, but it is evident that the written instrument was intended to more fully and completely embody the agreement of the parties before the full initial payment was to be made, and that all details mentioned above would doubtless have been covered thereby. Courts of equity will never decree the specific performance of a contract to convey real estate that is incomplete, indefinite, or uncertain in its terms, but will leave the aggrieved party to pursue his remedy at law for damages. The law is well settled in this state that, where the terms of an agreement are definitely fixed, so that

nothing remains except to reduce them to writing, the oral contract will be upheld, unless it was understood by the parties that it was not to become effective until reduced to writing. *Alexandria Billiard Co. v. Miloslowsky*, 167 Iowa 395.

If there is any uncertainty in the terms of the oral agreement, which has been taken out of the statute of frauds only by the payment of a small part of the consideration, or if it is manifest that it is incomplete, and that essential matters have not been agreed upon, specific performance will· be denied. In saying this, we are not to be understood as passing upon the question whether an oral contract to convey real estate, in pursuance of which a small sum has been paid, will be specifically enforced in this state. Upon this point we express no opinion. The contract which appellant seeks to have specifically enforced is manifestly lacking in completeness and certainty, and for this reason the relief prayed was properly denied by the court.

Upon the question of mutuality, little need be said. Appellees were clearly entitled to have the contract, when reduced to writing, signed by both appellant and his wife. She was not a party to the oral agreement. This is not answered· by testimony to the effect that she was willing and ready to sign the note and mortgage.

2. SPECIFIC PERFORMANCE: lack of mutuality.

She could not have been compelled to do so, nor were appellees under any obligations to accept a note and mortgage signed only by appellant. Appellant offered to waive the homestead and accept a conveyance of the rest of the tract; but the same infirmity of incompleteness and want of mutuality existed in the oral agreement as to this tract as to the farm as a whole.

We are satisfied that appellant failed to make out a case for specific performance, and the decree of the court below is— *Affirmed.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.